*In The*

# United States Court of Appeals

*for the*

# First Circuit

---

Case No. 15-2553

---

CHARLES LANGONE, Fund Manager of the
New England Teamsters and Trucking Industry Pension Fund,

*Plaintiff-Appellant,*

v.

N&D TRANSPORTATION COMPANY, INC.; LAURENT J. DUHAMEL;
ELIZABETH A. DUHAMEL; JED REALTY ASSOCIATES, LLC,

*Defendants-Appellees.*

---

*Appeal from an Order entered from the
United States District Court of Massachusetts, Boston*

---

## JOINT BRIEF FOR DEFENDANTS-APPELLEES

---

OLEG NIKOLYSZYN, ESQ.
155 South Main Street, Suite 303
Providence, Rhode Island 02903
(401) 474-4370

*Attorney for Defendants-Appellees
Laurent J. Duhamel and Elizabeth
A. Duhamel*

ROBERT A. MITSON, ESQ.
MITSON LAW ASSOCIATES
603 Park Avenue
Woonsocket, Rhode Island 02895
(401) 762-5900

*Attorney for Defendants-Appellees
N&D Transportation Company, Inc.,
Laurent J. Duhamel, Elizabeth A.
Duhamel and JED Realty
Associates, LLC*

---

CP COUNSEL PRESS • (888) 700-3226

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

CHARLES LANGONE, FUND MANAGER OF )
THE NEW ENGLAND TEAMSTERS AND )
TRUCKING INDUSTRY PENSION FUND, )
                                                )

     Plaintiff-Appellant,                 )     **No: 15-2553**

                                                )

vs.                                               )

                                               )

N&D TRANSPORTATION COMPANY, INC. )
LAURENT J. DUHAMEL; ELIZABETH A. )
DUHAMEL; JED REALTY ASSOCIATES, LLC. )

     Defendant-Appellees

## <u>CORPORATE DISCLOSURE STATEMENT</u>

**NOW COMES** Robert A. Mitson, Esq., counsel for N&D Transportation,

Inc., and JED Realty Associates, LLC, and pursuant to the Fed. R. App. P 26.1

hereby makes the following disclosures:

     1.    That the full name of each party represented by Robert A. Mitson,

Esq., in this case is as follows:

         N&D Transportation Company, Inc. (a Rhode Island Corporation)

         JED Realty Associates, LLC (a Rhode Island Limited Liability

Company)

2.    That Robert A. Mitson, Esq., has appeared on behalf of both N&D Transportation Company, Inc., and JED Realty Associates, LLC, in proceedings before the United States District Court, District of Massachusetts, and has filed his appearance for each of said parties before this Court;

3.    That both N&D Transportation Company, Inc., and JED Realty Associates, LLC, are non-governmental corporate parties requiring the filing of a Disclosure Statement;

4.    That N&D Transportation Company, Inc., does not have any parent corporation or publically owned corporation that owns ten percent or more of its stock;

5.    That JED Realty Associates, LLC, does not have any parent corporation or publically owned corporation that owns ten percent or more of its stock;

Respectfully submitted
N&D TRANSPORTATION COMPANY, INC.,
JED REALTY ASSOCIATES, LLC,

/s/Robert A. Mitson_____
Robert A. Mitson, Esq., BBO# 549395
603 Park Avenue
Woonsocket, RI 02895
(401)762-5900
(401)762-5907 Fax
Bob@MitsonLaw.com

# <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on the 8th day of March, 2016, I filed and served a copy of the within Corporate Disclosure Statement through the ECF System upon the parties as follows:

- Melissa A. Brennan, Esq. and
  Catherine M. Campbell, Esq.
  (Counsel for Plaintiffs)
  Feinberg, Campbell & Zack, PC
  177 Milk Street, Suite 300
  Boston, MA 02109
  (Served via U.S. Mail and ECF System)

     /s/ Robert A. Mitson_____

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ..........................................................................1

COUNTER-STATEMENT OF THE ISSUES PRESENTED ..................................5

COUNTER-STATEMENT OF THE CASE ...........................................................6

SUMMARY OF THE ARGUMENT ....................................................................8

STANDARD OF REVIEW ...............................................................................12

ARGUMENT ..................................................................................................13

I.      THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN PROPERLY DENYING PLAINTIFF'S MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(b)(6) AND 59(e) AND PLAINTIFF'S REQUEST FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT ...............................................................................13

II.     THIS COURT SHOULD AFFIRM DISMISSAL OF THE FIRST AMENDED COMPLAINT BECAUSE LANGONE'S ERISA ALTER EGO CLAIM DOES NOT PROVIDE A BASIS FOR FEDERAL JURISDICTION ......................................................................22

III.    THIS COURT SHOULD DECLINE TO ADOPT THE SEVENTH CIRCUIT'S APPROACH REGARDING SUBJECT MATTER JURISDICTION, WITH RESPECT TO ALLEGED ERISA VIOLATION, BECAUSE PLAINTIFF FAILS TO ESTABLISH THAT N&D WAS THE TRUE EMPLOYER FOR PURPOSES OF ERISA LIABILITY AND, EVEN UNDER THE STANDARD ARTICULATED BY THE SEVENTH CIRCUIT, PLAINTIFF CANNOT ESTABLISH A DIRECT ERISA VIOLATION .......................28

IV.    THE DISMISSAL OF THE FIRST AMENDED COMPLAINT SHOULD BE AFFIRMED SINCE THE DISTRICT COURT HAD

THE DISCRETION TO DECLINE TO EXERCISE SUPPLEMENTAL
JURISDICTION OVER THE OTHER CLAIMS BECAUSE IT
LACKS SUBJECT MATTER JURISDICTION FOR COUNT I OF
THE FIRST AMENDED COMPLAINT ...................................................35

V.    PLAINTIFF'S FRAUDULENT TRANSFER CLAIM REQUIRES AN
INDEPENDENT BASIS FOR JURISDICTION AND, THEREFORE,
THE DISTRICT COURT DOES NOT HAVE SUBJECT MATTER
JURISDICTION ........................................................................................38

      A.    The District Court Does Not Have Ancillary Jurisdiction Over
            Plaintiff's Fraudulent Transfer Claim Where It Does Not Have
            Federal Jurisdiction Over The Claim ..................................................38

      B.    Plaintiff's Fraudulent Transfer Claim Was Properly Dismissed
            Because It Cannot Survive a Motion to Dismiss Where It Was
            Indisputably Filed After the Statute of Limitations Expired .............42

VI.   DISMISSAL OF THE FIRST AMENDED COMPLAINT IS PROPER
BECAUSE IT FAILS TO ESTABLISH THE CRUCIAL ELEMENT
OF UNLAWFUL MOTIVE IN THE ERISA CLAIM ................................46

CONCLUSION ......................................................................................................51

# TABLE OF AUTHORITIES

**Page**

**Cases:**

*Alessi v. Raybestos-Manhattan, Inc.*,
    451 U.S. 504 (1981)........................................................................49

*Alpine View Co. v. Atlas Copco AB*,
    205 F.3d 208 (5th Cir. 2000) .................................................21, 32

*Am. Home Assur. Co. v. Sport Maska, Inc.*,
    808 F. Supp. 67 (D. Mass. 1992)....................................................31

*Antonucci v. Arrow Transp. Co.*,
    1983 R.I. Super. LEXIS 12, 1983 WL 481461 (R.I. Super. Ct. 1983) .........49

*Aponte-Torres v. Univ. of P.R.*,
    445 F.3d 50 (1st Cir. 2006)............................................................19

*Arruda v. Sears*,
    310 F.3d 1 (1st Cir. 2002)..............................................................45

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................15

*Aversa v. United States*,
    99 F.3d 1200 (1st Cir. 1996)....................................................30, 31

*Bd. of Trustees v. Elite Erectors, Inc.*,
    212 F.3d 1031 (7th Cir. 2000) .................................................29, 32

*Bogosian v. Woloohojian Realty Corp.*,
    323 F.3d 55 (1st Cir. 2003)............................................................14

*C.E.K. Indus. Mechanical Contractors, Inc. v. NLRB*,
    921 F.2d 350 (1st Cir. 1990)..........................................................26

*Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*,
    690 F.2d 489 (5th Cir. 1982) .........................................................47

*Carrero-Ojeda v. Autoridad De Energía Eléctrica*,
    755 F.3d 711 (1st Cir. 2014)..........................................................12

*Caterpillar, Inc. v. Williams*,
    482 U.S. 386 (1987)......................................................................30

*Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp.*,
    85 F.3d 1282 (7th Cir. 1996) ..............................................................*passim*

*Chongris v. Board of Appeals*,
    811 F.2d 36 (1st Cir. 1987)..........................................................20

*City of Chi. v. Int'l Coll. of Surgeons*,
    522 U.S. 156 (1997)......................................................................37

*Crest Tankers, Inc. v. National Maritime Union*,
    796 F.2d 234 (8th Cir. 1986) ......................................................48

*Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe*,
    257 F.3d 58 (1st Cir. 2001).........................................................17

*Debreceni v. Atlas Motor Express, Inc.*,
    1990 U.S. Dist. Lexis 10434, (D. Mass. Aug. 3, 1990,
    Civil Action No. 89-2217-Mc) ................................................ 32-33

*Dependahl v. Falstaff Brewing Corp.*,
    653 F.2d 1208 (8th Cir. 1981) ....................................................49

*DHL Corp. v. Loomis Courier Serv., Inc.*,
    522 F.2d 982 (9th Cir. 1975) ......................................................36

*DM Research, Inc. v. Coll. of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999)..........................................................44

*Duffy v. Dwyer*,
    847 A.2d 266 (RI 2004)...............................................................43

*Ed Peters Jewelry Co. v. C & J Jewelry Co.*,
    124 F.3d 252 (1st Cir. 1997)........................................................46

*Ellis v. All Steel Constr., Inc.*,
    389 F.3d 1031 (10th Cir. 2004) .......................................29, 30, 32

*Empire Lightning Fixture Co. v. Practical Lightning Fixture Co.*,
    20 F.2d 295 (2d Cir. 1927) .........................................................41

*Environtech Corp. v. Bethlehem Steel Corp.*,
    729 F.2d 70 (2d Cir. 1984) .........................................................36

*Epperson v. Entertainment Express, Inc.*,
    242 F.3d 100 (2d Cir. 2001) ...................................39, 40, 41, 42

*Exxon Mobil Corp. v. Allapattah Servs.*,
    545 U.S. 546 (2005)...................................................................35

*Fisher v. Kadant, Inc.*,
    589 F.3d 505 (1st Cir. 2009)....................................10, 12, 13, 14

*Fleet Nat'l Bank v. Valente (In re Valente)*,
    360 F.3d 256 (1st Cir. 2004)......................................................46

*Foman v. Davis*,
    371 U.S. 178, 83 S. Ct. 227 (1962) ...........................................18

*Freiburger v. Emery Air Charter, Inc.*,
    795 F. Supp. 253 (N.D. Ill. 1992).............................................36

*Fugazy Continental Corp.*,
    265 N.L.R.B. 1301 (1982) .........................................................50

*Futura Dev. of P.R., Inc. v. Estado Libre Asociado de P.R.*,
    144 F.3d 7 (1st Cir. 1998)...............................................24, 33, 34

*Glassman v. Computervision Corp.*,
    90 F.3d 617 (1st Cir. 1996).........................................................18

*Gonzalez-Morales v. Hernandez-Arencibia*,
    221 F.3d 45 (1st Cir. 2000).........................................................31

*Goodman Piping Prods. v. NLRB*,
    741 F.2d 10 (2d Cir. 1984) .........................................................47

*Gooley v. Mobil Oil Corp.*,
    851 F.2d 513 (1st Cir. 1988)................................................. 44-45

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002).............................................................22, 23

*H.C. Cook v. Beecher*,
    217 U.S. 497, 30 S. Ct. 601 (1910) ...........................................24

*Howard Johnson Co. v. Detroit Local Joint Exec. Bd.*,
    417 U.S. 249 (1974)....................................................................47

*Hunter v. Youthstream Media Networks*,
    241 F. Supp. 2d 52 (D. Mass. 2002)..........................................32

*In re Lumbermans Mortg. Co.*,
    712 F.2d 1334 (9th Cir. 1983) ....................................................44

*In re Sun Pipe Line Co.*,
    831 F.2d 22 (1st Cir. 1987)...........................................................................12

*Intergen N.V. v. Grina*,
    344 F.3d 134 (1st Cir. 2003).................................................................21, 32

*Iowa Express Distrib. v. NLRB*,
    739 F.2d 1305 (8th Cir. 1984) ...................................................................48

*James v. Watt*,
    716 F.2d 71 (1st Cir. 1983)........................................................................19

*Jorge Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*,
    37 F.3d 25 (1st Cir. 1994)..........................................................................14

*Karak v. Bursaw Oil Corp.*,
    288 F.3d 15 (1st Cir. 2002)...................................................................13, 14

*Knox v. Orascom Telecom Holding S.A.E.*,
    477 F. Supp. 2d 642 (S.D.N.Y. 2007) .............................................39, 40, 41

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375, 114 S. Ct. 1673 (1994) .........................................................35

*Lahaza v. Azeff*,
    790 F. Supp. 88 (E.D. Pa. 1992)................................................................36

*Langone v. C. Walsh Inc.*,
    864 F. Supp. 233 (D. Mass. 1994)..............................................................21

*Larkin v. Burns & Levinson, LLP*,
    2010 U.S. Dist. Lexis 31350
    (D. Mass. Mar. 30, 2010, No. 08-11792-DPW) ..........................................18

*Lihli Fashions Corp. v. NLRB*,
    80 F.3d 743 (2d Cir. 1996) ........................................................................32

*Maine State Building and Construction Trade Council, AFL-CIO v.*
    *United States Department of Labor*,
    359 F.3d 14 (1st Cir. 2004).........................................................................19

*Maldonado v. Dominguez*,
    137 F.3d 1 (1st Cir. 1998)..........................................................................18

*Manuela v. Gottlieb*,
    784 F. Supp. 84 (S.D.N.Y. 1992) ..............................................................36

*Marie v. Allied Home Mortg. Corp.*,
402 F.3d 1 (1st Cir. 2005)............................................................12

*Mass. Carpenters Cent. Collection Agency v. A.A. Bldg. Erectors, Inc.*,
343 F.3d 18 (1st Cir. 2003)......................................................27, 32

*Massachusetts Carpenters Cent. Collection Agency v.
Belmont Concrete Corp.*,
139 F.3d 304 (1st Cir. 1998).........................................21, 26, 27, 32

*Massachusetts Mut. Life Ins. Co. v. Russell*,
473 U.S. 134, 105 S. Ct. 3085 (1985) .............................................22

*Menard v. CSX Transportation, Inc.*,
840 F. Supp. 2d 421 (D. Mass. 2012)...............................................19

*Mertens v. Hewitt Associates*,
508 U.S. 248, 113 S. Ct. 2063 (1993) ........................................22, 23

*Miller v. Honda Motor Co.*,
779 F.2d 769 (1st Cir. 1985)...........................................................32

*Molett v. Penrod Drilling Co.*,
919 F.2d 1000 (5th Cir. 1990) ........................................................36

*Nachman Corp. v. Pension Benefit Guaranty Corporation*,
446 U.S. 359, 100 S. Ct. 1723 (1980) .............................................22

*NLRB v. Allcoast Transfer, Inc.*,
780 F.2d 576 (6th Cir. 1986) ..........................................................47

*NLRB v. Bell Co.*,
561 F.2d 1264 (7th Cir. 1977) .................................................... 47-48

*NLRB v. Dane County Dairy*,
795 F.2d 1313 (7th Cir. 1986) ........................................................48

*NLRB v. Hosp. San Rafael*,
42 F.3d 45 (1st Cir. 1994).............................................27, 46, 47, 50

*NLRB v. Tricor Prods., Inc.*,
636 F.2d 266 (10th Cir. 1980) ........................................................48

*Palmer v. Champion Mortg.*,
465 F3d 24 (1st Cir. 2006).........................................12, 13, 14, 18

*Peacock v. Thomas*,
    516 U.S. 349, 116 S. Ct. 862 (1986) ........................................................*passim*

*Pejepscot Indus. Park v. Me. Cent. R.R. Co.*,
    215 F.3d 195 (1st Cir. 2000)...........................................................................35

*Pelfresne v. Williams Bay*,
    865 F.2d 877 (7th Cir. 1989) .........................................................................43

*Penntech Papers v. NLRB*,
    706 F.2d 18 (1st Cir. 1983)................................................................47, 48, 50

*Raso v. Pegasus & Sons Masonry Co.*,
    110 F. Supp. 3d 284 (D. Mass. 2015)...........................................................21

*Rhyne v. Henderson County*,
    973 F.2d 386 (5th Cir. 1992) .........................................................................36

*Riggs v. Johnson County*,
    73 U.S. 166, 6 Wall. 166, 18 L. Ed. 768 (1868)...........................................38

*Rohm & Haas Co. v. Capuano*,
    301 F. Supp. 2d 156 (DRI 2004) ..................................................................42

*Roma Constr. Co. v. aRusso*,
    96 F.3d 566 (1st Cir. 1996)............................................................................20

*Ruckle v. Roto Am. Corp.*,
    339 F.2d 24 (2d Cir. 1964) ...........................................................................37

*S. Austin Coalition Cmty. Council v. SBC Communs., Inc.*,
    274 F.3d 1168 (7th Cir. 2001) ......................................................................43

*Sigros v. Walt Disney World Co.*,
    129 F. Supp. 2d 56 (D. Mass. 2001).............................................................31

*Southport Petroleum Co. v. NLRB*,
    315 U.S. 100 (1942)......................................................................................46

*Southport Petroleum Co. v. NLRB*,
    315 U.S. 100, 62 S. Ct. 452 (1992) ..............................................................26

*Stardyne, Inc. v. NLRB*,
    41 F.3d 141 (3d Cir. 1994) ...........................................................................50

*Supreme Bakery, Inc. v. Bagley*,
    742 A.2d 1202 (RI 2000)..............................................................................43

*Trans-Spec Truck Serv. v. Caterpillar Inc.*,
    524 F.3d 315 (1st Cir. 2008)........................................................18

*U.S.I. Props. Corp. v. M.D. Constr. Co.*,
    230 F.3d 489 (1st Cir. 2000)........................................................42

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
    360 F.3d 220 (1st Cir. 2004)....................................................44, 45

*United States ex rel. Rost v. Pfizer, Inc.*,
    507 F.3d 720 (1st Cir. 2007)........................................................18

*United States v. Roberts*,
    978 F.2d 17 (1st Cir. 1992)..........................................................13

*United States v. Siciliano*,
    578 F.3d 61 (1st Cir. 2009)..........................................................13

*Universal Commun. Sys. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007)....................................................10, 12

*Universal Communication Systems, Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007)........................................................19

*Venegas-Hernandez v. Sonolux Records*,
    370 F.3d 183 (1st Cir. 2004)....................................................12, 14

*Vera-Lozano v. International Broad.*,
    50 F.3d 67 (1st Cir. 1995)..........................................................35

*Wolfe v. Bethlehem Steel Corp.*,
    460 F.2d 675 (7th Cir. 1972) ......................................................44

## Statutes & Other Authorities:

28 U.S.C. § 1367 ........................................................................35

28 U.S.C. § 1367(a) ................................................................36, 37

28 U.S.C. § 1367(c) ............................................................35, 36, 38

28 U.S.C. § 1367(c)(3) ............................................................36, 37

28 U.S.C. § 1983 ........................................................................36

29 U.S.C. § 1001 ..........................................................................1

29 U.S.C. § 1132(e) ................................................49, 50

29 U.S.C. § 1381 ..........................................................1

Fed. R. Civ. P. 8(a) ....................................................44

Fed. R. Civ. P. 12(b)(1) .........................................*passim*

Fed. R. Civ. P. 12(b)(6) .........................................*passim*

Fed. R. Civ. P. 12(c) ..................................................46

Fed. R. Civ. P. 59 ................................................13, 14

Fed. R. Civ. P. 59(e) ...........................................*passim*

Fed. R. Civ. P. 60 ......................................................13

Fed. R. Civ. P. 60(b) ...........................................*passim*

R.I. Gen. Laws § 6-16-1 ..............................................45

R.I. Gen. Laws § 6-16-4 ..............................................46

R.I. Gen. Laws § 6-16-4(a)(1) ....................................43

R.I. Gen. Laws § 6-16-4(a)(2) ...............................42-43

R.I. Gen. Laws § 6-16-9 .........................................42, 43

R.I. Gen. Laws § 6-16-9(2) ........................................43

1 C. Keating & G. O'Gradney, *Fletcher Cyclopedia of Law of Private Corporations* § 41 (perm. ed. 1990) ..................... 23-24

11 Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995) ...............................................12

Note, Bargaining Obligations After Corporate Transformation, 54 N.Y.U.L. Rev. 624 (1979) ..............................................48

Note, *Piercing the Corporate Law Veil: The Alter Ego Doctrine Under Federal Law*, 95 Harv. L. Rev. 853 ...............................34

Note: Labor Law's Alter Ego Doctrine: The Role of Employer Motive in Corporate Transformations, 86 Mich. L. Rev. 1024 ...............47, 48

## PRELIMINARY STATEMENT

Defendants-Appellees N&D Transportation Company, Inc., ("N&D"), Laurent J. Duhamel and Elizabeth A. Duhamel ("the Duhamels") and JED Realty Associates, LLC ("JED Realty"), (collectively "Defendants"), submit this joint brief in opposition to the appeal of Plaintiff Charles Langone, as Fund Manager of the New England Teamsters and Trucking Industry Pension Fund ("Plaintiff" or "Langone").

Langone commenced this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, as amended by the Multi-Employer Pension Plan Amendments Act, 29 U.S.C. § 1381, *et seq.*, seeking to hold Defendants liable for a judgment rendered against D&N Transportation ("D&N Transportation") in a prior lawsuit. Plaintiff seeks to hold Defendants liable for the judgment under the alter ego theory, which ERISA does not recognize. Langone relied upon ERISA as a source of federal jurisdiction even though the United States Supreme Court in *Peacock v. Thomas*, 516 U.S. 349, 116 S. Ct. 862 (1986) held that a similar alter ego claim, to which Langone claims, does not state a cause of action under ERISA and cannot independently support federal jurisdiction.

Defendants moved to dismiss the First Amended Complaint under Rule 12(b)(6) and Rule 12(b)(1). The District Court held that Langone's First Amended

Complaint fails to state a claim for which relief can be granted. The District Court determined that the First Amended Complaint fails to allege a direct ERISA violation by the Defendants. With respect to subject matter jurisdiction, the District Court acknowledged that the Circuit Courts are split as to whether an ERISA alter ego allegation is sufficient to support federal jurisdiction against a defendant who was not a party to the original action. The District Court considered the Seventh Circuit application of ERISA jurisdiction and held that even if it applied the Seventh Circuit's view, the First Amended Complaint still fails to state a claim for which relief may be granted. The District Court declined to exercise supplemental jurisdiction over the remaining claims and dismissed the First Amended Complaint.

Also pending for the District Court's determination was Langone's motion to file a Second Amended Complaint. The proposed second amendment sought to add additional parties to this action.[1] The District Court exercised its discretion and declined permission to file the Second Amended Complaint as being futile

---

[1] The additional parties sought to be added as defendants were the individual owners of N&D, David C. Duhamel and Nancy A. Belsito, as well as entities DCD Professional Storage, Inc., all as alter egos of Defendant N&D, and Laurent J. Duhamel Revocable Trust UAD December 6, 1999 and the Elizabeth A. Duhamel Revocable Trust UAD December 6, 1999, as alter egos of their defendant namesakes. See the August 27, 2015 Memorandum and Decision, Add. Pg. 11, fn. 3 ("Add." refers to the Addendum attached to Plaintiff's Brief).

because it did not cure the deficiency that Plaintiff admitted gave reason to the dismissal of Plaintiff's First Amended Complaint (failure to allege a direct action giving rise to an alter ego claim and a timely violation of ERISA by the alleged alter ego).[2] There is nothing in the proposed Second Amended Complaint that was going to cure the deficiency the Plaintiff admitted was present in the First Amended Complaint.

Unsatisfied with the District Court's decision, Langone moved for relief under Fed. R. Civ. P. 60(b) and 59(e) and sought leave to further amend the First Amended Complaint.[3] The District Court denied Langone's motion. Acknowledging that it cannot hold the Defendants liable under ERISA, Langone seeks to change this Court's standard of review of the District Court's decision in order to obtain a favorable ruling, despite the applicable law to the contrary which states that the standard of review should be abuse of discretion. While this Court has not yet ruled on whether, in a suit to collect an ERISA judgment from an alleged alter ego of a judgment debtor, the failure of the plaintiff to plead the alleged alter ego's direct role in the ERISA violation creates a deficiency for subject matter jurisdiction, Langone boldly asserted that the District Court should

---

[2] See Plaintiff's motion for reconsideration, App. Pg. 21-22 ("App." refers to Plaintiff's Appendix); Add. Pg. 18.
[3] Presumably a Third Amended Complaint that was not yet drafted, nor presented to the District Court for consideration.

have applied the standards of the Seventh Circuit in analyzing the ERISA alter ego claim instead of applying the holding in *Peacock*.

Langone's efforts should be rejected. As stated below, Langone's claim fails even based on the test he seeks to apply under the Seventh Circuit decision because he cannot prove common control or that Defendants and D&N Transportation are the same entity. Therefore, Langone would not be able to establish subject matter jurisdiction of the ERISA alter ego claim because he cannot show a direct violation of ERISA. Here, there is no direct or common control by the Defendants because Langone's bare bones allegations are nothing more than conclusory statements of mere control by the Defendants.

Also, since Langone cannot establish subject matter jurisdiction, the District Court properly exercised its discretion in denying Langone's request for further amendment of the First Amended Complaint and denying relief to him under Fed. R. Civ. P. 60(b) and 59(e). In a last effort to obtain further amendment of the First Amended Complaint, Langone seeks to reverse the District Court's decision by stating an incorrect standard of review, contrary to the applicable law, and by seeking supplemental jurisdiction of the remaining claims. Given Langone's inability to establish subject matter jurisdiction, the District Court properly

dismissed the First Amended Complaint.  Accordingly, the order appealed from should be affirmed in all respects.[4]

## **COUNTER-STATEMENT OF THE ISSUES PRESENTED**

I.   Did the District Court properly deny Plaintiff's motion for relief under Rules 60(b)(6) and 59(e) and Plaintiff's request for leave to amend the First Amended Complaint when it has the discretion to do so?

The District Court correctly answered this question in the affirmative.

II.  Did the District Court properly dismiss the First Amended Complaint where the ERISA alter ego claim does not provide a basis for federal jurisdiction?

The District Court correctly answered this question in the affirmative.

III. Did the District Court properly decline to adopt the Seventh Circuit's view regarding subject matter jurisdiction, with respect to the alleged ERISA violation, where Plaintiff failed to establish that N&D was the true employer for purposes of ERISA liability and where Plaintiff cannot establish a direct ERISA violation under the standard of the Seventh Circuit?

The District Court correctly answered this question in the affirmative.

IV.  Did the District Court properly decline to exercise supplemental jurisdiction over Plaintiff's remaining claims where it lacks subject matter jurisdiction over Count I of the First Amended Complaint?

The District Court correctly answered this question in the affirmative.

---

[4] Langone does not appeal the District Court's dismissal of Count II of the complaint as against the personal Defendants, the Duhamels.  See Plaintiff's Brief, p. 28, fn. 7.

V.    Did the District Court properly dismiss Plaintiff's fraudulent transfer claim where Plaintiff could not establish subject matter jurisdiction?

The District Court correctly answered this question in the affirmative.

VI.   Whether the dismissal of the First Amended Complaint is proper where Plaintiff failed to prove the crucial element of unlawful motive in the ERISA claim and whether a federal common law should be established to prove an ERISA violation where the Circuit Courts differ on the required elements for proving an ERISA violation?

This question should be answered in the affirmed.

## COUNTER-STATEMENT OF THE CASE

The First Amended Complaint alleges D&N Transportation, who is not a party to this action, was obligated by the terms in one or more collective bargaining agreements to make contributions to the Pension Fund due to the Pension Fund's unvested liability. (SA16, 31; App. Pg. 3-13). According to the First Amended Complaint, the Pension Fund demanded payment by D&N Transportation of its proportionate share of the Pension Fund's unfunded vested benefit liability. (SA16, 31). The First Amended Complaint further alleges that the Pension Fund sought immediate payment of $1,200,486.00 from D&N Transportation and filed an action against D&N Transportation to collect the unpaid withdrawal liability (*Langone v. N&D Transportation, Inc.*, C.A. No. 12-10646-NMG). (SA16-17, 31-32; App. Pg. 3-13).

The court entered a judgment of $1,505,186.18 against D&N Transportation. (SA17, 31-32). The First Amended Complaint claims that D&N Transportation failed to make the payments to satisfy the judgment. (SA17, 32; App. Pg. 3-13). Therefore, Langone seeks payment under the judgment by commencing this action whereby he alleges that N&D, JED Realty and the Duhamels are alter egos of D&N Transportation. (SA17, 30-32; App. Pg. 7). Langone also claims that the Duhamels are former owners, officers and directors of D&N Transportation. (App. Pg. 6-7). Langone alleges that D&N Transportation sold its real property located at 100 Industrial Drive, North Smithfield, Rhode Island to JED Realty for $1,025,000. (App. Pg. 7). He states that JED Realty is owned by David Duhamel ("David"), the Duhamels' son. (App. Pg. 7). According to the First Amended Complaint, in order to finance the sale of the North Smithfield property, JED Realty executed a mortgage deed with D&N Transportation for $750,000.00. (App. Pg. 7). Langone further alleges that D&N Transportation then assigned the mortgage, promissory note and guarantee to the Duhamels. (App. Pg. 7). The First Amended Complaint does not allege that the assignment of the mortgage was done for the purpose of avoiding to pay the judgment. Also, none of the Defendants in this action were named as parties in the original action. (SA32; App. Pg. 3-13).

The District Court dismissed the First Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  The District Court held that the First Amended Complaint fails to state a claim upon which relief can be granted and because the First Amended Complaint fails to allege Defendants had a direct role in the alleged ERISA violation, which creates a deficiency in the subject matter jurisdiction. (Add. Pg. 8).  The District Court dismissed all the remaining claims.  (Add. Pg. 10).

Langone sought relief under Fed. R. Civ. P. 60(b) and 59(e) and requested further amendment of the First Amended Complaint.  The District Court denied the motion.  (Add. Pg. 14-21).  As stated in Langone's opening brief, Langone secured a direct appeal to this Court of the ruling.  For the reasons stated below, the ruling should be affirmed in all respects.

## SUMMARY OF THE ARGUMENT

Langone admitted in his Motion for Reconsideration and to Amend Judgment that the original complaint (and the First Amended Complaint) was flawed for lack of "temporal" allegations, *i.e.*, failure to allege that N&D was the alter ego of D&N Transportation at relevant times.  (Add. Pg. 17, 33-34, 36).  He also admitted that in his brief in this Court.  (Plaintiff's Brief, pp. 20, 27). Therefore, if the District Court was correct for that reason alone in dismissing the complaint, the issue on appeal is whether the District Court abused its discretion in

not allowing the complaint to be amended a second or third time.  If the answer to this question is in the negative, then this Court need not reach the substantive issues raised in this appeal, *i.e.*, whether the District Court had subject matter jurisdiction.

Defendants submit that, contrary to Langone's novel theory urging this Court to adopt a *de novo* review, the proper standard of review is whether to allow a further amendment of the complaint is for "abuse of discretion."  For the reasons stated, *infra*, Argument I, the District Court did not abuse its discretion in disallowing Langone's apparent attempt to use his Rule 59 and 60 motion as an attempt to propose submitting a Third Amended Complaint (not yet drafted or presented for consideration).  Apparently, abandoning the motion for permission to file a Second Amended Complaint (which was denied in the District Court's Memorandum and Decision of August 27, 2015), because it likewise was flawed in that it did not cure the deficiency which was present in the First Amended Complaint, Langone pleaded for permission to file yet another amended complaint to cure the "temporal" allegations.

This appeal, therefore, is condensed to whether the District Court abused its discretion in disallowing Langone's plea for permission to file yet another amendment seeking to cure the admitted flaws in his original complaint (and the First Amended Complaint).

9

The order appealed from should be affirmed in its entirety.  First, this Court reviews the District Court's denial of Langone's motion for relief under Fed. R. Civ. P. 60(b) and 59(e) and request for the amendment of the First Amended Complaint for abuse of discretion.  *Fisher v. Kadant, Inc.*, 589 F.3d 505, 512 (1st Cir. 2009); *Universal Commun. Sys. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007).  If the District Court did not abuse its discretion here, then the subsequent issue (subject matter jurisdiction) need not be addressed.

Second, the federal court does not have jurisdiction over Langone's ERISA alter ego claim as held under *Peacock v. Thomas*, *supra*.  Third, this Court should decline to adopt the decision of the Seventh Circuit, with respect to jurisdiction in ERISA claims, because Langone cannot establish direct ERISA violation by the Defendants.  Even if the holding of the Seventh Circuit is applied, Langone will still fail the test for subject matter jurisdiction because the First Amended Complaint does not sufficiently plead facts establishing the Defendants directly controlled D&N Transportation.

Fourth, this Court should not adopt the suggested *de novo* review because the District Court did not improperly analyze the issue of subject matter jurisdiction in the dismissal of the First Amended Complaint.  The District Court held that Langone failed to state a claim, for which relief can be granted, and

declined to rule on whether Langone's failure to allege Defendants' direct control of D&N Transportation is insufficient for subject matter jurisdiction.

Fifth, the dismissal of the entire First Amended Complaint is proper since the District Court does not have jurisdiction over Count I of the First Amendment Complaint and it did not abuse its discretion in declining to exercise supplemental jurisdiction over the remaining claims.

Sixth, Langone's argument, with respect to the fraudulent transfer claim, is unavailing. The fraudulent transfer claim requires an independent basis for jurisdiction because it is based on separate facts and theories from the initial action. Therefore, the holding of *Peacock* is applicable to Langone's fraudulent transfer claim and the District Court properly dismissed it for lack of jurisdiction. Also, the fraudulent conveyance allegation is untimely as violative of the applicable statute of limitations, *see Infra*, pp. 43-44. Furthermore, dismissal of the fraudulent transfer count is proper because the allegations in the First Amended Complaint are insufficient to state a claim for fraudulent transfer.

Finally, because Langone fails to establish the element of unlawful motive, one of the elements in assessing ERISA liability, dismissal of the First Amended Complaint is proper. Accordingly, the order appealed from should be affirmed, together with such other and further relief to Defendants as this Court deems just and proper.

## **STANDARD OF REVIEW**

The granting of a Rule 59 motion reconsideration is such an extraordinary remedy that it should be used sparingly. *Palmer v. Champion Mortg.*, 465 F3d 24, 30 (1st Cir. 2006); 11 Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995). If the court did not misapprehend a material fact or point of law, a motion for reconsideration is not a promising method for revisiting a party's case and rearguing issues previously advanced and rejected. *See In re Sun Pipe Line Co.*, 831 F.2d 22, 24-25 (1st Cir. 1987). To obtain relief, the movant must demonstrate either that newly-discovered evidence has come to light or the rendering district court committed a manifest error of law. *See Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n. 2 (1st Cir. 2005).

This Court reviews the District Court's denial of Langone's motion for relief under Fed. R. Civ. P. 60(b) and 59(e) and request for the amendment of the First Amended Complaint for abuse of discretion. *Fisher v. Kadant, Inc.*, *supra*, 589 F.3d at 512; *Universal Commun. Sys. v. Lycos, Inc.*, *supra*, 478 F.3d at 418.

This Court also reviews the district court's denial of a Rule 60 motion for abuse of discretion "while being mindful that the district court enjoys 'considerable' discretion in this area." *Carrero-Ojeda v. Autoridad De Energía Eléctrica*, 755 F.3d 711, 723 (1st Cir. 2014); *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 190 (1st Cir. 2004); *Fisher v. Kadant, Inc.*, *supra*. This

Court will not reverse the district court's denial of a Rule 59 motion to set aside the judgment or a Rule 60 motion for reconsideration, absent an abuse of discretion. *Id.* A district court abuses its discretion when "a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales." *United States v. Roberts*, 978 F.2d 17, 20 (1st Cir. 1992); *United States v. Siciliano*, 578 F.3d 61, 72 (1st Cir. 2009).

## ARGUMENT

## I.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN PROPERLY DENYING PLAINTIFF'S MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(b)(6) AND 59(e) AND PLAINTIFF'S REQUEST FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT.

Under Fed. R. Civ. P. 60(b)(6), the District Court has the authority to vacate judgments where exceptional circumstances exist. *Fisher v. Kadant, Inc.*, *supra*. Success under a Fed. R. Civ. P. 60(b) motion requires more than "merely casting doubt on the correctness of the underlying judgment." *Id.*; *see Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002). Since relief under Fed. R. Civ. P. 60(b) is "extraordinary in nature," motions under the rule should be granted sparingly. *Id.*; *Palmer v. Champion Mortg.*, *supra*, 465 F.3d at 30. A party invoking relief under Fed. R. Civ. P. 60(b) must demonstrate that exceptional circumstances exist,

favoring relief, and if the judgment is set aside, he has a potential meritorious claim or defense. *Karak*, 288 F.3d at 15. The party must further demonstrate that the opposing party will not suffer any unfair prejudice. *Id.*

Fed. R. Civ. P. 59 permits the District Court to alter or amend a default judgment on the grounds that the judgment is based on a manifest error of law. *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 188 (1st Cir. 2004); *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 72 (1st Cir. 2003).

> [A] motion under Rule 59(e) [to alter and amend a judgment] is not appropriately used to present new issues or evidence: Rule 59(e) motions are aimed at *re*consideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued. Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence. They may not be used to argue a new legal theory.

*Jorge Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*, 37 F.3d 25, 29 (1st Cir. 1994) (citation omitted).

As established above, the standard of appellate review for motions under Fed. R. Civ. P. 59(e) and 60(b)(6) is abuse of discretion. *Fisher v. Kadant, Inc.*, *supra*, 589 F.3d at 512; *Palmer v. Champion Mortg.*, *supra*, 465 F.3d at 30. Langone clearly misinterpreted the District Court's decision and, in an effort to obtain a favorable standard of review, he argues the District Court dismissed the First Amended Complaint pursuant to Rule 12(b)(1) rather than Rule 12(b)(6).

Langone's entire argument is premised on subject matter jurisdiction, all while failing to address the reasons for the District Court's denial of his motions under Rule 59(e) and Rule 60(b)(6). Defendants filed motions to dismiss the First Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (SA29-38). In the August 27, 2015 decision, the District Court analyzed Langone's alter ego claim and determined that the First Amended Complaint does not describe a direct ERISA violation by Defendants which would grant the court subject matter jurisdiction. (Add. Pg. 4). The District Court analyzed the issue of subject matter jurisdiction, but the District Court declined to rule on whether Langone's failure to allege Defendants' direct role in the control of the ERISA violation is insufficient for purposes of subject matter jurisdiction since Langone fails to state a claim for which relief can be granted. (Add. Pg. 8). The District Court properly granted Defendants' motion to dismiss under Rule 12(b)(6) for failure to state a claim for which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (stating that "only a complaint that states a plausible claim for relief survives a motion to dismiss"). Within the same decision, the District Court denied Langone's second request for leave to amend the First Amended Complaint. (Add. Pg. 11). The District Court, thereafter, entered a judgment dismissing the complaint.

Unsatisfied with the judgment and the District Court's denial of his second request to amend the First Amended Complaint, Langone filed a motion for relief

from judgment pursuant to Rule 60(b)(6) and/or motion to amend the judgment pursuant to Rule 59(e). (App. Pg. 14-26). Contrary to Langone's argument, he raised the issue of subject matter jurisdiction in his motion. (Plaintiff's Brief, p. 12; App. Pg. 21). In the motion, Langone conceded that the First Amended Complaint is defective because it does not sufficiently allege an ERISA violation since it did not state that N&D is an alter ego of D&N Transportation at the time of the liability withdrawal. (App. Pg. 21; Add. Pg. 18). Thus, Langone basically asked the District Court to allow amendment in order to properly assert subject matter jurisdiction. (App. Pg. 21). The motion to amend, with the attached Second Amended Complaint, does not cure the temporal deficiencies found in the First Amended Complaint, and, therefore, it, too, was deficient. The proposed Second Amended Complaint made no changes to the allegations contained in the First Amended Complaint, with respect to the absence of direct control or failure to allege temporal allegations, but only sought to add additional parties to the action.

In response to Langone's admission of the defective First Amended Complaint, the District Court, in the November 18, 2015 decision, addressed Langone's subject matter jurisdiction argument in response to Langone's request and to clarify the prior order. The District Court determined that, even if Langone could amend the First Amended Complaint it would be futile because "there would still be a question of whether ERISA alter ego allegations are sufficient to support

federal jurisdiction." (Add. Pg. 19-20). Nowhere did the District Court decide the Rule 59 and 60(b)(6) motion under Rule 12(b)(1). Langone raised the issue in his motion and the District Court clarified it since Langone misinterpreted the prior August 27, 2015 decision. (Add. Pg. 18). Rule 60(b)(6) allows the court to reopen a judgment only after a showing of extraordinary circumstances. *Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe*, 257 F.3d 58, 67 (1st Cir. 2001). Since Langone fails to establish an extraordinary circumstance warranting relief under Rule 60(b)(6), the District Court did not abuse its discretion in denying relief to Langone.

Furthermore, Langone's motion for reconsideration was a motion for a request for a third amendment of the First Amended Complaint which was cloaked as a motion under Rule 60(b)(6). Langone had previously requested leave to amend the initial complaint, and the request was granted. He, thereafter, moved to file a Second Amended Complaint, which the District Court denied in the August 27, 2015 memorandum of decision. In his motion under Rule 59(e) and 60(b)(6), Langone agreed with the dismissal of the First Amended Complaint and requested leave to amend it in order to cure the defects within the First Amended Complaint. (App. Pg. 21-22; Add. Pg. 18). Langone attached a proposed Second Amended Complaint to his motion. Langone agreed to the dismissal of Count II of the Amended Complaint against the Duhamels and requested that Count I of the First

Amended Complaint be reinstated in order to add David Duhamel, Nancy Duhamel and additional defendants under a claim of fraudulent conveyance. (App. Pg. 23-24).

Leave to amend a pleading should be "freely given when justice so requires." *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733-734 (1st Cir. 2007); Federal Rule of Civil Procedure 15(a). However, the district courts have the discretion to deny a motion for leave to amend, due to undue delay, dilatory motive, bad faith and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962); *Maldonado v. Dominguez*, 137 F.3d 1, 11 (1st Cir. 1998) (refusing to remand the case to allow for a revision of the complaint because the amendments proposed by the plaintiffs would be futile); *see Palmer v. Champion Mortg.*, *supra*, 465 F.3d at 30; *Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 326 (1st Cir. 2008); *Glassman v. Computervision Corp.*, 90 F.3d 617, 622 (1st Cir. 1996) (stating "where there is an adequate reason for the denial of leave to amend a complaint, this Court will affirm the denial").

The District Court did not abuse its discretion in denying Langone's third request for amendment via the motion for reconsideration because allowing leave for a second or third amended complaint would be futile. *Larkin v. Burns & Levinson, LLP*, 2010 U.S. Dist. Lexis 31350, at *5 (D. Mass. Mar. 30, 2010, No. 08-11792-DPW). It is well-settled that futility is an adequate basis to deny

amendment to a complaint. *See Universal Communication Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007); *Maine State Building and Construction Trade Council, AFL-CIO v. United States Department of Labor*, 359 F.3d 14, 19 (1st Cir. 2004). Moreover, "an amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss." *Menard v. CSX Transportation, Inc.*, 840 F. Supp. 2d 421, 427 (D. Mass. 2012).

Here, amendment would be futile because the proposed amended complaint does not adequately plead the ERISA alter ego claims and there would be an issue of whether the ERISA alter ego claims are sufficient to support federal jurisdiction. (Add. Pg. 19). The District Court's ruling is based on Langone's request to amend the First Amended Complaint, which this Court reviews for abuse of discretion. *Universal Commun. Sys. v. Lycos, Inc.*, *supra*. In review of the denial of a motion to file an amended complaint, this Court "will defer to the district court's hands-on judgment so long as the record evinces an adequate reason for the denial." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006); *see James v. Watt*, 716 F.2d 71, 77-78 (1st Cir. 1983) (finding no abuse of the district court's discretionary power to deny plaintiff's motion to amend the pleadings).

This Court reviews the denial of Langone's Rule 59(e) and 60(b)(6) motion and motion for leave to amend for abuse of discretion. In the August 27, 2015 memorandum decision, which is the basis for Langone's motions, the District

Court properly considered whether Langone's claims can survive a motion to dismiss. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of actions which "fail to state a claim upon which relief can be granted." *Roma Constr. Co. v. aRusso*, 96 F.3d 566, 569 (1st Cir. 1996). In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court accepts the well-pleaded facts in the complaint as true and construes those facts in a light most favorable to the plaintiff. *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987). However, the court "should not grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *Roma Constr. Co. v. aRusso*, 96 F.3d at 569.

Langone's First Amended Complaint alleges that the matter is an action under ERISA. (SA5, 16, 30-31; App. Pg. 3-13). The First Amended Complaint alleges that N&D, who was not a party to the original action between Plaintiff and D&N Transportation, was obligated by the terms of one or more collective bargaining agreements to make contributions to the Pension Fund. (SA16, 31; App. Pg. 3-13). A judgment of $1,505,186.18 was entered against D&N Transportation based on the original action. (SA17, 32; App. Pg. 3-13). Langone alleges that D&N Transportation failed to make payments to the Pension Fund in satisfaction of the judgment. (SA17, 32; App. Pg. 3-13). Langone alleges that N&D and JED Realty are alter egos of D&N Transportation and, therefore, are

20

liable for the judgment. (SA17, 32; App. Pg. 3-13). The First Amended
Complaint further alleges that the Duhamels are alter egos of D&N Transportation.
(App. Pg. 3-13). The First Amended Complaint makes no allegation that N&D,
JED Realty or the Duhamels committed an independent and direct violation of
ERISA. (SA33; App. Pg. 3-13).

The First Amended Complaint fails to state a cause of action upon which
relief can be granted because, as established above, under *Peacock*, ERISA does
not allow for the imposition of liability of an existing ERISA judgment against a
third-party and the District Court was not required to conduct an analysis of the
alter ego status or duties of the Defendants. *See Peacock v. Thomas*, *supra*, 516
U.S. at 352, 116 S. Ct. 866. Moreover, the allegations in the First Amended
Complaint are insufficient for Langone to establish a claim for alter ego liability.
*Intergen N.V. v. Grina*, *supra*, 344 F.3d at 149; *see Alpine View Co. v. Atlas Copco
AB*, 205 F.3d 208, 218-219 (5th Cir. 2000).

The District Court was not required to examine alter ego liability under
*Belmont*, *Raso v. Pegasus & Sons Masonry Co.*, 110 F. Supp. 3d 284 (D. Mass.
2015) or *Langone v. C. Walsh Inc.*, 864 F. Supp. 233, 238 (D. Mass. 1994)
because, in *Belmont*, the plaintiff was able to establish a direct violation of ERISA,
which the First Amended Complaint failed to do. In *Belmont*, *Raso* and *Langone*,
the complaints had sufficient facts giving rise to ERISA liability under the theory

of alter ego.  Even if the District Court had granted Langone's third request to amend the First Amended Complaint, Langone would not be able to state a claim for relief in light of the Supreme Court's decision in *Peacock*, which this Court should adopt, and Langone does not have a viable claim for ERISA violation against Defendants.  Accordingly, the decision of the District Court denying Langone's request for leave to amend the First Amended Complaint and motion pursuant to Rule 59(e) and 60(b)(6) should be affirmed.

## II.  THIS COURT SHOULD AFFIRM DISMISSAL OF THE FIRST AMENDED COMPLAINT BECAUSE LANGONE'S ERISA ALTER EGO CLAIM DOES NOT PROVIDE A BASIS FOR FEDERAL JURISDICTION.

ERISA is a "comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system." *Mertens v. Hewitt Associates*, 508 U.S. 248, 251, 113 S. Ct. 2063 (1993), quoting *Nachman Corp. v. Pension Benefit Guaranty Corporation,* 446 U.S. 359, 361, 100 S. Ct. 1723 (1980).  Therefore, the Supreme Court has been hesitant to extend remedies that are not specifically authorized by the text of the statute.  *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S. Ct. 3085 (1985); *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002).  Undeniably, ERISA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that

Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.*, citing *Mertens*, *supra*, at 508 U.S. at 254.

In *Peacock v. Thomas*, *supra*, the Supreme Court declined to find subject matter jurisdiction over a lawsuit seeking to enforce an existing federal judgment on a new defendant who was not part of the original lawsuit. There, the plaintiff, Jack Thomas ("Thomas"), filed an ERISA class action against his former employer, Tru-Tech and D. Grant Peacock, an officer and shareholder of Tru-Tech. 516 U.S. at 351, 116 S. Ct. at 865. The District Court entered judgment in favor of Thomas and against Tru-Tech, but found that Peacock was not a fiduciary of Tru-Tech. *Id.* Thomas unsuccessfully attempted to collect on the judgment and amended his complaint to assert a claim for "piercing the corporate veil under ERISA and Applicable Federal Law." *Id.* at 352, 866.

The Supreme Court stated that ERISA does not allow for the imposition of liability of an existing ERISA judgment against a third-party. *Id.* In the complaint, Thomas did not allege a direct violation of ERISA. The Court rejected Thomas' veil piercing claim because it does not state a cause of action under ERISA and it cannot independently support federal jurisdiction. *Id.* at 354, 866. The court stated that "piercing the corporate veil is not itself an independent ERISA cause of action 'but rather is a means of imposing liability on an underlying cause of action.'" *Id.*, citing 1 C. Keating & G. O'Gradney, *Fletcher Cyclopedia of Law of Private*

*Corporations* § 41, p. 603 (perm. ed. 1990). The Supreme Court held Thomas'

lawsuit is not ancillary to the original ERISA suit because the facts of the new

proceedings are not dependent upon the old proceeding. *Id.* at 355, 867. The

Supreme Court reaffirmed its decision in *H.C. Cook v. Beecher*, 217 U.S. 497, 30

S. Ct. 601 (1910) and refused to exercise ancillary jurisdiction in a new lawsuit

seeking to enforce an existing federal judgment on a new defendant not already

liable for the judgment. *Id.* at 357, 868. The Supreme Court also cautioned against

exercising ancillary jurisdiction over proceedings that are new and where the new

proceeding lacks factual dependence upon the old proceeding. *Id.* at 358, 869.

In *Peacock*, because Thomas' new lawsuit did not allege any substantive

ERISA violation and the new theories of liability were not asserted in the original

ERISA suit, the court held the action was a new matter, based on theories that did

not and could not exist at the time the district court entered the judgment in the

ERISA case. *Id.* at 359, 869. Although the federal courts recognize federal

jurisdiction on alter ego ERISA cases, in *Peacock*, the Supreme Court declined to

authorize the exercise of ancillary jurisdiction in a subsequent lawsuit where the

former employer and the alter ego were not sued in the same action.

Consistent with this controlling Supreme Court decision, this Court in

*Futura Dev. of P.R., Inc. v. Estado Libre Asociado de P.R.*, 144 F.3d 7 (1st Cir.

1998) held that the District Court did not properly exercise jurisdiction over

Futura's claim against the Commonwealth of Puerto Rico because the Commonwealth was not named in the original judgment. *Id.* at 7. Accordingly, this Court, relying on *Peacock*, held there was no enforcement jurisdiction over the Commonwealth because the plaintiff sought to assign liability to a new party by using an alter ego claim, which, in turn, created a separate action requiring separate jurisdiction. *Id.* at 9-13.

The District Court properly dismissed the complaint because Langone seeks to do the same act, which is prohibited by the Supreme Court in *Peacock*, that is, pursuing federal jurisdiction over third-parties by seeking to impose liability for a judgment on an entity and individuals not named in the original judgment. Here, the First Amended Complaint does not allege that Defendants directly violated ERISA. In seeking to hold Defendants liable for violation under ERISA, Langone solely based his claim on allegations that N&D is an alter ego of D&N Transportation because they share the same building; the Duhamels are alter egos of D&N Transportation because they control its assets because of a real estate deal; and that the Duhamels benefited when they allegedly sold D&N's primary property to JED Realty, which is allegedly controlled by their son. In fact, Langone concedes in his brief that the "temporal" aspect required for alter ego ERISA liability is missing from the First Amended Complaint, thus one of the reasons for Langone's application for leave to amend the First Amended Complaint, which

was properly denied by the District Court.  (Plaintiff's Brief, pp. 20, 27).  Langone also concedes that the First Amended Complaint fails to state that Defendants had direct control over D&N Transportation as to be independently liable for ERISA violation.  (Plaintiff's Brief, pp. 20-21; App. pg. 21-22; Add. Pg. 18).

The alter ego doctrine prevents employers from escaping their obligations under labor laws and collective bargaining agreements.  *Massachusetts Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 307 (1st Cir. 1998).  The doctrine is also applicable in cases where a successor company is disguised as a continuance of an old employer.  *Id.*; *C.E.K. Indus. Mechanical Contractors, Inc. v. NLRB*, 921 F.2d 350, 354 (1st Cir. 1990); *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106, 62 S. Ct. 452 (1992).  Although the alter ego theory has been applied to cases brought under ERISA, in such circumstances, the employer and the alleged alter ego are brought into the suit at the same time.  *Belmont* at 307.  Here, Langone's reliance on *Belmont* is of no avail.  In *Belmont*, although this Court applied alter ego liability in a case brought under ERISA, the plaintiff in *Belmont* filed the initial action against both the employer and the alter ego, alleging violations of Section 515 of ERISA.  *Id.* at 307.  Thus, the plaintiff in *Belmont* was able to establish a direct ERISA violation on the basis of alter ego.  In *Belmont*, the alter ego company was independently liable under ERISA.  The plaintiff in *Belmont* was able to establish direct violation because the owner of both

26

Belmont and the alter ego company signed an agreement on Belmont's behalf, binding Belmont to a collective bargaining agreement. *Id.* at 306-307. Although the alter ego company was a nonsignatory to the agreement, this Court determined it played a direct role in the ERISA violation by virtue of the continuity of ownership between the two companies. *Id.* at 309.

The District Court properly rejected the claim of ERISA violation because of the lack of a "temporal" aspect in the First Amended Complaint and nowhere does the First Amended Complaint allege that Defendants breached any duties to Langone under ERISA. In reviewing a claim for alter ego, the courts will consider various factors which include the similarity between the old and new company, with respect to management, business purpose, operation, equipment, customers and supervision, and ownership. *Belmont* at 308; *NLRB v. Hosp. San Rafael*, 42 F.3d 45, 50 (1st Cir. 1994). However, Langone cannot rely upon *Belmont* and claim the applicability of the alter ego doctrine simply because two entities' "relationship is [allegedly] marked by a sufficient number of the doctrine's characteristic criteria -- *e.g.*, continuity of ownership between the corporations, management overlap, similarity of business purpose, evidence that the non-union entity was created to avoid an obligation in a collective bargaining agreement." *Mass. Carpenters Cent. Collection Agency v. A.A. Bldg. Erectors, Inc.*, 343 F.3d 18, 21 (1st Cir. 2003).

III.   **THIS COURT SHOULD DECLINE TO ADOPT THE SEVENTH CIRCUIT'S APPROACH REGARDING SUBJECT MATTER JURISDICTION, WITH RESPECT TO ALLEGED ERISA VIOLATION, BECAUSE PLAINTIFF FAILS TO ESTABLISH THAT N&D WAS THE TRUE EMPLOYER FOR PURPOSES OF ERISA LIABILITY AND, EVEN UNDER THE STANDARD ARTICULATED BY THE SEVENTH CIRCUIT, PLAINTIFF CANNOT ESTABLISH A DIRECT ERISA VIOLATION.**

In *Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp.*, 85 F.3d 1282 (7th Cir. 1996), the plaintiff pension fund won a judgment against the Rogers Group Companies. *Id.* at 1284. When the fund was unable to collect the judgment, it commenced a suit against two companies, claiming that they were the alter egos of the Rogers Group Companies. *Id.* The District Court found that the fund failed to prove the two alleged alter ego companies "completely dominated" the Rogers Group and entered judgment for the defendants. *Id.* at 1285. The Seventh Circuit affirmed. *Id.*

The Seventh Circuit analyzed the issue of subject matter jurisdiction in light of the decision in *Peacock*. *Id.* The court distinguished *Peacock* as a case where the plaintiff, Thomas, pursued Peacock by attempting to pierce the corporate veil. *Id.* at 1286. Thomas did not claim that Peacock was liable for the underlying ERISA violation. *Id.* In contrast, the plaintiff in *Cent. States* framed its theory of liability differently by claiming that the defendants so dominated and controlled the Rogers Group Companies, they were the true employers for purposes of ERISA liability. *Id.* The court noted that the plaintiff in *Cent. States* was not solely

28

seeking to enforce a judgment, but it claimed that the defendants played an integral part in the initial ERISA violation because they exercised common control of the Rogers Group Companies. *Id.* The court further distinguished *Peacock* from *Cent. States* by stating that *Peacock* is categorized as a "suit to enforce a judgment, while [*Cent. States*] is a specific claim for relief under ERISA." *Id.*

In another case, *Bd. of Trustees v. Elite Erectors, Inc.*, 212 F.3d 1031 (7th Cir. 2000), the Seventh Circuit differentiated between vicarious liability and direct liability and held that if a plaintiff asserts that "A is B's 'alter ego,'" then they are the same entity and liability is direct. *Id.* at 1037. But, in *Ellis v. All Steel Constr., Inc.*, 389 F.3d 1031, 1035 (10th Cir. 2004), the Tenth Circuit followed the jurisdictional principles of *Peacock* and held that where ERISA liability is asserted under an alter ego theory or successor liability, a separate basis for jurisdiction must be established. There, the plaintiff, an employee benefit plan, obtained a judgment under ERISA. *Id.* at 1032. When plaintiff failed to collect on the judgment, it sued the defendant as the alter ego successor of the judgment debtor. Although the district court found the defendant was the alter ego successor of the debtor, the Tenth Circuit vacated the district court's judgment. The Tenth Circuit held that, because the complaint failed to allege the defendant exercised control over the debtor's business or dominated the debtor's operations during the time the ERISA obligation arose, the alter ego claim required its own basis for federal

29

jurisdiction separate from the initial ERISA judgment against the debtor. *Id.* at 1036. The Tenth Circuit stated, "the determinative factor is not whether ERISA liability is asserted against the second company based upon an alter ego or veil piercing theory; rather the determinative factor is whether ERISA liability is asserted against the second company directly based on the actions of the second company or whether liability is asserted only derivatively or vicariously against the second entity based solely upon the relationship between the second entity and the initial ERISA employer." *Id.* at 1035.

Although this Court has not weighed on in the issue of whether a bare ERISA alter ego allegation is sufficient to support subject matter jurisdiction, this Court should affirm the dismissal of the First Amended Complaint for lack of subject matter jurisdiction under the analysis of *Peacock*. First, Langone failed to meet his burden for subject matter jurisdiction outlined in *Cent. States* and *Elite Erectors*. *See Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996). It is well-established that the presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, although the district court may consider other evidence, such as depositions and exhibits, dismissal is proper where based on the facts alleged it is clear that plaintiff cannot recover on any viable theory if the facts

reveal a jurisdictional defect not otherwise remediable. *Aversa* at 1210; *Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 48 (1st Cir. 2000).

Here, Langone simply did not sufficiently plead a federal case that would grant the District Court subject matter jurisdiction. Langone admits that the temporal aspects required for establishing the "common control" theory, which, according to *Cent. States*, supports ERISA liability and, thus, allows the District Court to assume subject matter jurisdiction, is not present. (Plaintiff's Brief, p. 20). Langone further admits that the First Amended Complaint fails to allege N&D directly controlled D&N Transportation. (Plaintiff's Brief, p. 20; App. Pg. 3-13).

Langone's argument that he established common control through affidavits and depositions is of no avail because the depositions and exhibits do not establish that N&D and D&N Transportation are the same entity. An entity having common ownership, coupled with common management with another entity, does not give rise to alter ego liability without additional facts exhibiting the existence of an agency relationship. *Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56, 70 (D. Mass. 2001); *see Am. Home Assur. Co. v. Sport Maska, Inc.*, 808 F. Supp. 67 (D. Mass. 1992) (stating "that a parent and subsidiary sharing common officers, by itself, is not enough to support the alter ego theory"). The District Court properly determined that Langone failed to establish subject matter jurisdiction because he

failed to offer any evidence of "common control" theory of *Cent. States*, giving rise to alter ego liability. If the affairs of two entities are not intertwined as to demonstrate that, in reality, they are a single entity, there is no alter ego liability. *See Miller v. Honda Motor Co.*, 779 F.2d 769, 772 (1st Cir. 1985). Furthermore, a claim that a parent and an alleged subsidiary company share a common office, by itself, is insufficient to support the theory of alter ego. *See id.* at 772.

Even if the standards of *Cent. States* and *Elite Erectors* are applied, Langone fails to establish a direct ERISA violation because he cannot prove common control and, therefore, is unable to show that "A and B are the same entity." *Elite Erectors* at 1038. In a claim for alter ego liability, a bare assertion of common ownership and common management is insufficient to pave the way for alter ego liability. *Intergen N.V. v. Grina*, 344 F.3d 134, 149 (1st Cir. 2003); *see Alpine View Co. v. Atlas Copco AB*, *supra*, 205 F.3d at 218-19 (stating that "100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations"); *Mass. Carpenters Cent. Coll'n Agency v. Belmont Concrete Corp.*, *supra*, 139 F.3d at 308; *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 749 (2d Cir. 1996); *Hunter v. Youthstream Media Networks*, 241 F. Supp. 2d 52, 59 (D. Mass. 2002). A proper alter ego test examines the entities' corporate structures to determine to what degree the entities are substantially identical. *Debreceni v. Atlas Motor Express, Inc.*, 1990 U.S. Dist.

32

Lexis 10434, at *2-3 (D. Mass. Aug. 3, 1990, Civil Action No. 89-2217-Mc).

Even if Langone's ERISA claim is styled as one for alter ego liability under *Cent.*

*States*, the District Court did not have subject matter jurisdiction because the First

Amended Complaint lacks the temporal elements and does not allege that D&N

Transportation was under the direct common control of N&D and JED Realty.

Second, this Court should adopt the view of *Peacock* because the facts of

*Peacock* and *Futura* are applicable to this case since they hold that a plaintiff may

not assign liability to a new party not part of the initial action by using an alter ego

claim since the alter ego claim creates a separate action, it requires separate federal

jurisdiction. Therefore, the alter ego claim over the third-party is insufficient to

support federal jurisdiction. Contrary to Langone's argument, the facts of *Peacock*

and *Futura* are similar to the facts of this case. In both cases, the plaintiffs were

seeking to enforce pre-existing judgments obtained in prior suits, under the

doctrine of alter ego, in a second action against third-parties or entities who were

not sued in the initial action. Similar to the plaintiffs in *Peacock* and *Futura*,

Langone won a judgment against D&N Transportation. The initial action included

a claim against D&N Transportation. Unable to collect on the judgment, Langone

sued Defendants asserting a claim for ERISA violation under alter ego. Although

*Futura* is not an ERISA case, similar to *Futura* and *Peacock*, Langone's only basis

for jurisdiction is premised upon an alter ego theory. "An alter ego claim involves

an independent theory of liability under equity, complete with new evidence."
*Futura* at 13, citing Note, *Piercing the Corporate Law Veil: The Alter Ego Doctrine Under Federal Law*, 95 Harv. L. Rev. 853, 853.  In *Futura*, this Court acknowledged that "some alter ego claims can be so characterized," but it rejected the claim of alter ego because the parties were separate entities.  *Id.* at 12.

The factors enumerated in *Belmont*, which Langone relies upon in arguing that Count I of the First Amended Complaint should not have been dismissed because N&D and JED Realty are the alter egos of D&N Transportation, based on the companies operating in the same building, is of no merit.  Langone concedes that the "temporal" aspects required for ERISA liability is missing from the First Amended Complaint.  In fact, Langone argues that if the First Amended Complaint was amended, he would add "more specific temporal allegations" to establish that N&D and JED Realty were D&N Transportation's alter ego.  (Appellant's Brief, pp. 27-28).  Here, there is no independent basis for federal jurisdiction and the complaint fails to establish N&D is an alter ego of D&N under ERISA.  Dismissal of the complaint is proper.

## IV.   THE DISMISSAL OF THE FIRST AMENDED COMPLAINT SHOULD BE AFFIRMED SINCE THE DISTRICT COURT HAD THE DISCRETION TO DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE OTHER CLAIMS BECAUSE IT LACKS SUBJECT MATTER JURISDICTION FOR COUNT I OF THE FIRST AMENDED COMPLAINT.

"The district courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673 (1994).  The decision whether to exercise supplemental jurisdiction is left to the sound discretion of the district court.  *Pejepscot Indus. Park v. Me. Cent. R.R. Co.*, 215 F.3d 195, 206 (1st Cir. 2000); *see Vera-Lozano v. International Broad.*, 50 F.3d 67, 70 (1st Cir. 1995).  A party asserting jurisdiction bears the burden of establishing that a claim does not lie outside the district court's limited jurisdiction.  *Id.*

28 U.S.C. § 1367 grants the district courts broad supplemental jurisdiction, but only over claims with the same case or controversy and as long as the district court would have original jurisdiction over the claims.  *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 557 (2005).  Clearly under 28 U.S.C. § 1367(c), the District Court has the discretion to dismiss all of Langone's claims because it lacks subject matter jurisdiction over the ERISA alter ego claim[5].

---

[5] The District Court did not exercise supplemental jurisdiction over the state claim in Count III.  (Add. Pg. 10).  Langone appears to have waived the application of supplemental jurisdiction for Count III because he only requested that

Under 28 U.S.C. § 1367(c), if the district court dismisses the original claim
for lack of subject matter jurisdiction, the district court is divested of all power to
adjudicate any supplemental claim, and all supplemental claims may be dismissed
without prejudice. *See Molett v. Penrod Drilling Co.*, 919 F.2d 1000, 1004 (5th
Cir. 1990); *Environtech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 73 (2d Cir.
1984) (stating that once the district court dismissed the original claim for lack of
subject matter jurisdiction, it lacked the authority to retain the counterclaim under
ancillary jurisdiction); *DHL Corp. v. Loomis Courier Serv., Inc.*, 522 F.2d 982, 985
(9th Cir. 1975). The statute is clear that § 1367(a)'s general grant of supplemental
jurisdiction authority is explicitly premised on the existence of a jurisdiction-
conferring claim within the original jurisdiction of the federal courts. *See Rhyne v.
Henderson County*, 973 F.2d 386 (5th Cir. 1992) (dismissing state claims in a
§ 1983 case under § 1367(c)(3) after the federal question claims had been
dismissed); *Freiburger v. Emery Air Charter, Inc.*, 795 F. Supp. 253 (N.D. Ill.
1992); *Lahaza v. Azeff*, 790 F. Supp. 88 (E.D. Pa. 1992) (declining to apply
supplemental jurisdiction under § 1367(c)(3) to state law claims where it had
dismissed the federal question claims); *Manuela v. Gottlieb*, 784 F. Supp. 84
(S.D.N.Y. 1992) (declining to exercise supplemental jurisdiction under

---

supplemental jurisdiction be extended to Count IV and Count V. (Plaintiff's Brief,
p. 29).

36

§ 1367(c)(3) over state law claims after dismissal of the federal claim alleging violations of securities laws); *Ruckle v. Roto Am. Corp.*, 339 F.2d 24, 27 (2d Cir. 1964) (stating that "pendent jurisdiction over a claim under state law requiring a plenary trial on the merits should not be exerted when the federal claim is dismissed prior to trial").

Even assuming the District Court had jurisdiction over Langone's ERISA alter ego claim, the District Court had the discretion to decline to exercise supplemental jurisdiction to the other claims. While the district courts have the discretion to exercise supplementary jurisdiction, "§ 1367(a) confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). For example, the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if:

(1) the claim raises a novel or complex issue of state law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, because Count I of the First Amended Complaint does not state a valid ERISA alter ego claim, the dismissal of the First Amended Complaint should be affirmed.

## V.   PLAINTIFF'S FRAUDULENT TRANSFER CLAIM REQUIRES AN INDEPENDENT BASIS FOR JURISDICTION AND, THEREFORE, THE DISTRICT COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION.

### A.   The District Court Does Not Have Ancillary Jurisdiction Over Plaintiff's Fraudulent Transfer Claim Where It Does Not Have Federal Jurisdiction Over The Claim.

The district court has inherent ancillary enforcement jurisdiction.  *Peacock v. Thomas*, *supra*, 516 U.S. at 356-357.  Absent jurisdiction to enforce a judgment entered by a federal court, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution."  *Id.*, citing *Riggs v. Johnson County*, 73 U.S. 166, 6 Wall. 166, 187, 18 L. Ed. 768 (1868).  In defining their inherent power to enforce their own judgments, "the district courts have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third-parties to assist in the protection and enforcement of federal judgments."  *Peacock* at 356-357.  However, the district courts' exercise of ancillary enforcement jurisdiction is limited as expressed in the Supreme Court's holding in *Peacock* where the court

acknowledged that it "has never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.*

Langone is seeking to achieve the type of ancillary jurisdiction that the Supreme Court in *Peacock* bars. *Knox v. Orascom Telecom Holding S.A.E.*, 477 F. Supp. 2d 642, 646 (S.D.N.Y. 2007). Langone relies upon *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100 (2d Cir. 2001) and claims that, because *Peacock* does not apply to fraudulent transfer cases, the District Court has subject matter jurisdiction. In *Epperson*, the plaintiff was granted a default judgment against Hill Arts and Entertainment Systems, Inc. ("HAESI") on a breach of contract claim. *Id.* at 102. The plaintiff later filed a new action alleging that HAESI fraudulently transferred its assets to another company and had granted liens on its property in favor of other parties. *Id.* at 103. The complaint pled the court's inherent enforcement jurisdiction as the basis for subject matter jurisdiction. *Id.* The district court, relying on *Peacock*, dismissed the second action because it determined that the fraudulent conveyance claim fell outside of the court's ancillary jurisdiction. *Id.* The court found that the fraudulent conveyance claims were based on new theories of liability which were not pled in the original complaint, and, therefore, required an independent basis for jurisdiction. *Id.*

The Second Circuit distinguished the basis for jurisdiction in an action to collect a judgment and in an action holding third-party liability. *Id.* at 104. While an action to establish liability on the part of a third-party must have its own source of federal jurisdiction, an action to collect a judgment does not require an independent basis for jurisdiction. *Id.* The Second Circuit held that "*Peacock* does not hold that fraudulent conveyance claims brought in a subsequent action require an independent jurisdictional basis." *Id.* at 105. The court claimed that a footnote in *Peacock* left that issue open and, if the *Peacock* Court had intended to hold claims to void fraudulent transfers require an independent basis for jurisdiction, the footnote would not have been necessary. *Id.* The Second Circuit held that, because the plaintiff was only seeking to void the fraudulent conveyances of HAESI to the other parties in order to collect the default judgment against HAESI and the fraudulent conveyance claims do not seek to hold the other parties liable for the existing judgment against HAESI as alter egos of HAESI, the fraudulent conveyance claims were within the scope of the enforcement jurisdiction of the district court. *Id.* at 107. Also, because the fraudulent conveyance claims are not seeking to establish liability on the new parties, jurisdiction is proper. *Id.*

The decision in *Epperson* has been questioned by *Knox v. Orascom Telecom Holding S.A.E.*, *supra*, which holds that *Epperson* is premised upon how fraudulent conveyance is regarded under the law of the Second Circuit. *Id.* at 647. The

rationale for enforcement jurisdiction in *Epperson* does not support an assertion of ancillary jurisdiction in fraudulent conveyance cases where there is no allegation that the plaintiff-judgment-debtor fraudulently conveyed funds or assets to the third-party for the purpose of avoiding payment of the judgment. *Id.* Accordingly, *Epperson* it is not applicable to this case. *Epperson* was decided in accordance with *Empire Lightning Fixture Co. v. Practical Lightning Fixture Co.*, 20 F.2d 295 (2d Cir. 1927), which held that a fraudulent conveyance is void under New York statute. *Epperson* at 104; *Knox, supra,* 477 F. Supp. 2d at 647. *Epperson* "is based in large part on how a fraudulent conveyance is regarded under the law of this Circuit — the conveyance is considered void and, thus, the property or monies conveyed are deemed to still be that of the judgment debtor." *Id.* Therefore, the finding of enforcement jurisdiction in *Epperson* does not support Langone's claim of ancillary jurisdiction because the First Amended Complaint does not allege that the purported "transfer" of the mortgage for the North Smithfield property to the Duhamels by JED Realty was done for the purpose of avoiding the judgment against D&N Transportation.   (App. pg. 9-10); *see Knox* at 647.  The First Amended Complaint merely alleges that Langone's withdrawal claim against D&N Transportation arose after the alleged transfer.  (App. pg. 9-10).  In fact, the alleged fraudulent transfer occurred some 11 years before the withdrawal liability arose. (SA12).  It cannot be argued that the transfer made 11 years before the withdrawal

liability arose was for the purpose of avoiding payment of a liability not yet attached nor contemplated. (App. pg. 222-227, 228-233).

In *Knox*, the Second Circuit pointed out a major dilemma in exercising enforcement jurisdiction under *Epperson* in cases such as this, where enforcement jurisdiction would require the District Court to determine whether JED Realty, the alleged assignor of the mortgage, promissory note and guarantee, is owned by D&N Transportation or is the same entity. *Id.* at 647. Such determination would require an analysis of the alter ego theory, which requires an independent basis for jurisdiction. *Id.*; *Peacock*, *supra*, 516 U.S. at 355. Hence, the District Court properly dismissed Count III of the First Amended Complaint because it is based on different facts and theories of liability from the initial judgment. The courts have cautioned upon the exercise of jurisdiction over such proceedings and will not exercise jurisdiction over them. *Id.* at 357; *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489 (1st Cir. 2000).

### B.     Plaintiff's Fraudulent Transfer Claim Was Properly Dismissed Because It Cannot Survive a Motion to Dismiss Where It Was Indisputably Filed After the Statute of Limitations Expired

Under R. I. Gen. Laws § 6-16-9, a cause of action for fraudulent transfer should be extinguished if the action is not brought within four years after the transfer was made. *See Rohm & Haas Co. v. Capuano*, 301 F. Supp. 2d 156 (DRI 2004) (dismissing the fraudulent transfer claims under R.I. Gen. Laws §§ 6-16-

4(a)(2) because they were not brought within four years of the transfer as required under R.I. Gen. Laws § 6-16-9(2); *Duffy v. Dwyer*, 847 A.2d 266, 269 (RI 2004); *Supreme Bakery, Inc. v. Bagley*, 742 A.2d 1202, 1204 (RI 2000).  Although not relied upon by the District Court, the allegations of Count III of the First Amended Complaint are on its face violative of the statute of limitations of the Rhode Island General Laws, which establish a four (4)-year statute to sue for fraudulent transfers.  (App. Pg. 3-13).  R.I. Gen. Laws § 6-16-9.[6]  Based upon the pleadings, this action was commenced in January 2014, whereas the sale and assignment of the mortgage took place in 2003, some 11 years earlier.  (App. Pg. 172-185).  There being no allegation that there was actual intent to "hinder, delay or defraud any creditor," the fraudulent transfer count is time-barred.  For this reason alone, the Duhamels are entitled to a judgment on the pleadings pursuant to Rule 12(c).  It is axiomatic that this Court can sustain the District Court's judgment on grounds other than those used by the district court.  *Pelfresne v. Williams Bay*, 865 F.2d 877, 882 (7th Cir. 1989) (stating that "there are other grounds on which the district court may be sustained"); *S. Austin Coalition Cmty. Council v. SBC Communs., Inc.*, 274 F.3d 1168 (7th Cir. 2001) (sustaining the district court's judgment on

_____

[6] The four-year statute of limitations can be extended pursuant to § 6-16-4(a)(1) only if the transfer was made:  "With actual intent to hinder, delay or defraud any creditor of the debtor."  There is no allegation in the complaint that makes such a claim of actual intent to defraud.

other grounds even though the appellate court disagreed with the district court's opinion); *Wolfe v. Bethlehem Steel Corp.*, 460 F.2d 675, 678 (7th Cir. 1972) (refusing to consider other points raised by defendant because the judgment, notwithstanding the verdict, entered by the district court, is properly sustained on other grounds); *In re Lumbermans Mortg. Co.*, 712 F.2d 1334, 1335 (9th Cir. 1983) (stating "[w]e elect not to reach those difficult questions because we can sustain the judgment of the district court on other grounds presented by the record and briefed and argued in this appeal").

Count III (fraudulent transfer claim) of the First Amended Complaint was properly dismissed. The federal courts require complaints to include a short and plain statement of claim, showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a), *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 240 (1st Cir. 2004); *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999). While the complaint does not need to include evidentiary detail, it must "allege a factual predicate concrete enough to warrant further proceedings." *Id.* (stating that "conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition"). Notwithstanding the liberal pleading requirements of Rule 8(a), a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil*

44

*Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). "Simply parroting the language of a statutory cause of action, without providing some factual support, is not sufficient to state a claim." *United States ex rel. Karvelas* at 240; *see Arruda v. Sears*, 310 F.3d 13, 18 (1st Cir. 2002).

The First Amended Complaint alleges that the alleged fraudulent transfer (that occurred in Rhode Island) occurred 11 years earlier. (SA12; App. Pg. 7-10, 172-185). The fraudulent transfer count is based upon a sale by D&N of its real estate to JED Realty in 2003 (Complaint ¶44). (SA11; App. Pg. 9). That sale was for the price of $1,025,000. (SA11; App. Pg. 9). The First Amended Complaint alleges that this sale made D&N insolvent (even though D&N continued to operate until 2011), and represented its only asset. (SA11; App. Pg. 10). The First Amended Complaint further alleges that there was a mortgage of $750,000 which financed the purchase of this realty (Complaint ¶46), and the mortgage was assigned by D&N to the Duhamels (Complaint ¶47), which occurred on January 31, 2003. (SA11-12; App. Pg. 9-10). Assuming, and taking these allegations as true, that the sale of the building some eight (8) years prior to there being a withdrawal liability, the First Amended Complaint claims that such a sale and assignment violated Rhode Island General Laws § 6-16-1, *et seq.* (Uniform Fraudulent Transfer Act).

A transfer is fraudulently made if the debtor made the transfer "with actual intent to hinder, delay or defraud any creditor of the debtor." R.I. Gen. Laws 6-16-4; *Fleet Nat'l Bank v. Valente (In re Valente)*, 360 F.3d 256, 260 (1st Cir. 2004); *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 262 (1st Cir. 1997). The plaintiff bears the burden by a preponderance of the evidence that the transfer is fraudulent. *Id.* There is no allegation that this transfer or assignment was made with the intention to deprive any creditor of any assets some eight years later nor does Langone bear his burden of establishing fraudulent transfer by a preponderance of the evidence. Accordingly, the Duhamels are entitled to judgment, pursuant to Rule 12(c). (SA5-13).

## VI.  DISMISSAL OF THE FIRST AMENDED COMPLAINT IS PROPER BECAUSE IT FAILS TO ESTABLISH THE CRUCIAL ELEMENT OF UNLAWFUL MOTIVE IN THE ERISA CLAIM.

An alter ego analysis is applied where an employer attempts to avoid its duties under a collective bargaining agreement, and is particularly common in the context of successor employers, where the successor is "merely a disguised continuance of the old employer." *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106 (1942). Langone relies upon *NLRB v. Hosp. San Rafael*, *supra* and claims that he does not have to prove wrongful motive because it's not an essential element in establishing an ERISA violation. (Plaintiff's Brief, p. 15). Although in *Hosp. San Rafael*, this Court stated that wrongful motive is not a required element

for ERISA violation, it has also stated that "*[u]nlawful motive or intent are critical inquiries in an alter ego analysis, inquiries which are wholly absent in a single employer analysis.*" (emphasis added). *Penntech Papers v. NLRB*, 706 F.2d 18, 24 (1st Cir. 1983). In *Hosp. San Rafael*, this Court acknowledged its decision in *Penntech Papers* and noted that its discussion of *Penntech Papers* "has given rise to some uncertainty about this court's position on the role of wrongful motive in alter ego cases." *San Rafael*, 42 F.3d 45, 51, n 1. Contrary to Langone's false assertion, it is not an absolute rule that wrongful motive is not a required element in order to prove an ERISA violation. In fact, the Circuit Courts are split in terms of adopting intent or wrongful motive as an element in proving an ERISA violation. *Id.* at 51; *see* Note: Labor Law's Alter Ego Doctrine: The Role of Employer Motive in Corporate Transformations, 86 Mich. L. Rev. 1024, 1038. In *Howard Johnson Co. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 259 (1974), the Supreme Court said that wrongful motive is "frequently" present in the alter ego cases, although it did not say "always." While some Circuit Courts have, in some aspect, adopted a standard in which intent or wrongful motive is not essential to the imposition of alter ego status (*see Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 508 (5th Cir. 1982); *Goodman Piping Prods. v. NLRB*, 741 F.2d 10, 11 (2d Cir. 1984); *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 581 (6th Cir. 1986); *NLRB v. Bell Co.*, 561 F.2d 1264, 1268 n. 4 (7th

Cir. 1977),[7] this Court and the Eighth Circuit have adopted the intent element as a

prerequisite in an alter ego analysis. *Penntech Papers v. NLRB*, *supra*; *Crest

Tankers, Inc. v. National Maritime Union*, 796 F.2d 234, 237 (8th Cir. 1986)

(stating "a critical part of the inquiry into alter ego status . . . is whether the

employers acted out of anti-union sentiment or to avoid a labor contract"); *NLRB v.

Tricor Prods., Inc.*, 636 F.2d 266, 270 (10th Cir. 1980) (stating "we think evidence

of anti-union sentiment by an employer, occurring either before or after the change

in the structure of the business, is germane"); *Iowa Express Distrib. v. NLRB*, 739

F.2d 1305, 1310 (8th Cir. 1984); *see also* Note, Bargaining Obligations After

Corporate Transformation, 54 N.Y.U.L. Rev. 624, 638 (1979) ("while a single

employer examination is essentially objective, the employer's motivation for the

business change is an important element of the alter ego analysis").

Given the split within the Circuit Courts regarding the element of intent or

wrongful motivation in an analysis of alter ego liability, a federal common law

should be established which sets forth the elements required for proving alter ego

liability in a claim alleging ERISA violation instead of applying the substantive

state law. Congress, in its need to provide for uniform remedies in the

---

[7] In *NLRB v. Dane County Dairy*, 795 F.2d 1313, 1322 (7th Cir. 1986), "the
Seventh Circuit appeared to require intent in a more recent case by including
'unlawful motivation' in its recitation of the elements proven by the General
Counsel." Note: Labor Law's Alter Ego Doctrine: The Role of Employer Motive
in Corporate Transformations, 86 Mich. L. Rev. 1024, 1045, fn. 128.

enforcement of employee benefit plans, has preempted all state laws relating to employee benefit plans. *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1215 (8th Cir. 1981); *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981) (stating Congress "meant to establish pension plan regulation as exclusively a federal concern").

While Congress has explicitly set forth the broad policy of ERISA and the exclusive jurisdiction of the federal courts, it has provided for concurrent jurisdiction in state courts of competent jurisdiction over certain actions. *Antonucci v. Arrow Transp. Co.*, 1983 R.I. Super. LEXIS 12, *2, 1983 WL 481461 (R.I. Super. Ct. 1983). 29 U.S.C. § 1132(e), reads in part:

> (1) Except for actions under subsection (a)(1)(B) (3) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the secretary or by a participant, beneficiary or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

Subsection (a)(1)(B) of 9 U.S.C. § 1132(e) provides that a civil action may be brought by a participant or beneficiary in order "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the plan." *Id.* at 3. Although there may be instances where a plaintiff's exclusive remedy in an ERISA action is solely

under ERISA, there may be allegations that may be brought in state court under the exception in 29 U.S.C. § 1132(e).  *Id.*

Since a plaintiff's claim may often be preempted by ERISA and, therefore, subject only to federal jurisdiction, a federal common law should be established rather than applying the substantive state law.  Here, because Langone's federal claim fails for lack of subject matter jurisdiction, the District Court properly declined to exercise supplemental jurisdiction over the state law claims.  In determining whether Langone is required to prove motive in the ERISA claim, it should be noted that, despite this Court's decision in *Hosp. San Rafael*, *supra*, *Penntech Papers* has not been overruled.  Despite Langone's claim that motive need not be present, some of the courts, who hold a different view from this Court's decision in *Penntech Papers*, have held that intent or motive should be treated as an additional factor to be considered when determining alter ego status. *Stardyne, Inc. v. NLRB*, 41 F.3d 141, 147 (3d Cir. 1994); *Fugazy Continental Corp.*, 265 N.L.R.B. 1301, 1302 (1982).  Since Langone is unable to establish ERISA liability under the theory of alter ego, the dismissal of the First Amended Complaint is proper.

# **CONCLUSION**

For the reasons stated above, the order appealed from should be affirmed, together with such other and further relief to Defendants as this Court deems just and proper.

*/s/ Robert A. Mitson*

ROBERT A. MITSON, Esq.

BAR # 549395

MITSON LAW ASSOCIATES

*Attorney for Defendants-Appellees*

*N&D Transportation Company, Inc.,*

*Laurent J. Duhamel, Elizabeth A.*

*Duhamel and JED Realty*

*Associates, LLC*

603 Park Avenue

Woonsocket, RI  02895

Phone:        (401) 762-5900

Facsimile:   (401) 762-5907

bob@MitsonLaw.com


*/s/ Oleg Nikolyszyn*

OLEG NIKOLYSZYN, ESQ.

BAR # 1171941

*Attorney for Defendants-Appellees*

*Laurent J. Duhamel and Elizabeth A.*

*Duhamel*

155 South Main Street, Suite 303

Providence, RI  02903

Phone:        401-474-4370

Facsimile:   401-273-5290

nikolyszyn@gmail.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

### Certificate of Compliance with Type-Volume Limitation, Typeface Requirement, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(a)(B) because this brief contains 12,180 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).


2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:  this brief has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14 point font.


*/s/ Robert A. Mitson*
ROBERT A. MITSON, Esq.


Attorney for Defendants-Appellees


Dated:  June 8, 2016

## CERTIFICATE OF FILING AND SERVICE

I, Elissa Matias, hereby certify pursuant to Fed. R. App. P. 25(d) that, on

June 8, 2016, the foregoing Joint Brief for Defendants-Appellees was filed through

the CM/ECF system and served electronically on the individual listed below:

Melissa A. Brennan
Catherine M. Campbell
Feinberg Campbell & Zack PC
177 Milk Street
Suite 300
Boston, MA 02109
(617) 338-1976

/s/ Elissa Matias
   Elissa Matias