## No. 15-2553

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

CHARLES LANGONE, FUND MANAGER OF THE NEW ENGLAND
TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND,

Plaintiff-Appellant

v.

N&D TRANSPORTATION COMPANY, INC.; LAURENT J. DUHAMEL;
ELIZABETH A. DUHAMEL; JED REALTY ASSOCIATES, LLC

Defendants-Appellees

**On Appeal from the United States District Court
For the District of Massachusetts, Boston**

**REPLY BRIEF OF PLAINTIFF-APPELLANT NEW ENGLAND
TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND**

Catherine M. Campbell, Esq.
Melissa A. Brennan, Esq.
Feinberg, Campbell & Zack, PC
177 Milk Street
Suite 300
Boston, MA 02109
Telephone: (617) 338-1976
Facsimile: (617) 338-7070

Attorneys for Plaintiff-Appellant

# TABLE OF CONTENTS

***Page***

TABLE OF AUTHORITIES ........................................................................ ii

ARGUMENT ............................................................................................ 1

   1.  THE FUND CAN SHOW D&N AND N&D ARE THE SAME ENTITY AND EQUALLY RESPONSIBLE FOR THE WITHDRAWAL LIABILITY ...................................................... 1

   2.  THE FUND DID NOT MISREPRESENT THE DISTRICT COURT'S DECISION ................................................................ 7

   3.  THE FUND'S RULE 59 AND RULE 60 MOTIONS WERE PROPERLY PLED ...................................................................... 10

   4.  THE ALTER EGO DOCTRINE DOES NOT REQUIRE AN UNLAWFUL MOTIVE OR AN AGENCY RELATIONSHIP .. 13

   5.  THE FUND'S FRAUDULENT TRANSFER CLAIM CAN SURVIVE A MOTION TO DISMISS ......................................... 17

CONCLUSION ......................................................................................... 19

SIGNATURE ............................................................................................ 19

CERTIFICATE OF COMPLIANCE WITH
Fed. R. App. P. 32(a)(7) ........................................................................... 20

CERTIFICATE OF SERVICE ................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*Alkire v. NLRB*, 716 F.2d 1014 (4th Cir. 1983) ................................................ 16, 17

*Am. Home Assur. Co. v. Sport Maska, Inc.*, 808 F. Supp. 67 (D. Mass. 1992).......15

*Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S. Ct. 2166,

    115 L. Ed. 2d 96 (1991).......................................................................................17

*Bd. of Trs. v. Foodtown, Inc.*, 296 F.3d 164 (3d Cir. N.J. 2002)............................18

*Bd. of Trs. v. Full Circle Group, Inc.*, 2016 U.S. App. LEXIS 11600

(7th Cir. June 24, 2016) ..........................................................................................5

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) .....................................................6

*Board of Trustees v. Elite Erectors, Inc.*, 212 F.3d 1031 (7th Cir. Ind. 2000)..........5

*Brown v. Astro Holdings*, 385 F. Supp. 2d 519 (E.D. PA 2005)..............................5

*C.E.K. Industrial Mechanical Contractors, Inc. v. NLRB*, 921 F.2d 350

(1st Cir. 1990) ........................................................................................................8

*Central States Pension Fund v. Central Transport, Inc.*, 85 F.3d 1282

(7th Cir. 1996)....................................................................................................4, 5

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................. 13, 20

*Cooper v. Charter Communs. Entm't I, LLC*, 2015 U.S. Dist. LEXIS 56149

(D. Mass. Apr. 28, 2015) ......................................................................................14

*Ellis v. All Steel Constr., Inc.*, 389 F.3d 1031 (10th Cir. 2004)....................... 10, 19

*Flynn v. R.C. Tile*, 353 F.3d 953 (D.C. Cir. 2004) ................................................16

*Foman v. Davis*, 371 U.S. 178 (1962) ....................................................13

*Goodman Piping Products, Inc. v. NLRB*, 741 F.2d 10 (2d Cir. 1984)..................17

*Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel and Restaurant Employees, and Bartenders Int'l Union*, 417 U.S. 249, 94 S. Ct. 2236, 41 L. Ed. 2d 46 (1974)....................................................................17

*Iowa Express Distribution, Inc. v. NLRB*, 739 F.2d 1305 (8th Cir. 1984) .............17

*Johnstown Corp.*, 313 N.L.R.B. 170 (1993)..........................................16

*Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449 (7th Cir. 1991) ........................18

*Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304 (1st Cir. 1998)........................................................... passim

*Nelson Electric v. NLRB*, 638 F.2d 965 (6th Cir. 1981)........................................17

*NLRB v. Al Bryant, Inc.*, 711 F.2d 543 (3d Cir. 1983) ............................................17

*NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576 (6th Cir. 1986)............................16

*NLRB v. Deena Artware, Inc.*, 361 U.S. 398 (1960) .................................................8

*NLRB v. Hospital San Rafael, Inc.*, 42 F.3d 45 (1st Cir. 1994)........................ 15, 16

*NLRB v. Tricor Prods.*, 636 F.2d 266 (10th Cir. 1980)................................... 16, 17

*P.B.G.C. v. Ouimet Corp.*, 630 F.2d 4 (1st Cir. 1980), cert. denied; 450 U.S. 914 (1981)........................................................................................4

*Peacock v. Thomas*, 516 U.S. 349 (1996).................................................... 5, 18, 19

*Penntech Papers v. NLRB*, 706 F.2d 18 (1st Cir. 1983)................................... 14, 17

*Resilient Floor Covering Pension Fund v. M & M Installation, Inc.*, 2012 U.S.
Dist. LEXIS 26354 (N.D. Cal. Feb. 29, 2012) ............................................ 17, 18

*Ret. Plan of the Unite Here Nat'l Ret. Fund v. Kombassan Holdings A.S.*, 629 F.3d
282 (2d Cir. 2010) ...........................................................16

*Rohm & Haas Co. v. Capuano,* 301 F. Supp. 2d 156 (D.R.I. 2004) .......................19

*Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105 (9th Cir. 1979) ..........17

*Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56 (D. Mass 2001) .................15

*Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 62 S. Ct. 452, 86 L. Ed. 718
(1942) ...............................................................................17

*Stardyne, Inc. v. NLRB*, 41 F.3d 141 (3d Cir. 1994) ...............................16

*Tavares de Almeida v. Childrens Museum*, 28 F. Supp. 2d 682 (D. Mass. 1998)...20

*Union Builders, Inc. v. NLRB*, 68 F.3d 520 (1st Cir. 1995) ......................8

*White v. Commissioner*, 899 F. Supp. 767 (D. Mass. 1995)..........................6

**Statutes**

29 U.S.C. § 1001, *et seq.*...........................................................3

29 U.S.C. § 1002(5) ...............................................................9

29 U.S.C. § 1301(b)(1)...............................................................9

29 U.S.C. § 1381 *et seq.*...........................................................3

29 U.S.C. § 142(1) ................................................................9

29 U.S.C. § 1451(b) ...............................................................13

29 U.S.C. § 152(2),(6) and (7) ...................................................................9

ERISA § 3(5) ...............................................................................................9

ERISA § 4001(b)(1) .....................................................................................9

ERISA § 4301(b) ........................................................................................13

Mass. Gen. L. ch. 223A, § 3 ......................................................................15

R.I. Gen. Laws § 6-16 ................................................................................19

## Other Authorities

126 Cong. Rec. 23,038 (1980) ...................................................................17

Wright & Miller, Federal Practice and Procedure: Civil 2d § 1367(1990) ............20

Wright & Miller, Federal Practice and Procedure: Civil § 1363 (1990) .................6

## Rules

Fed. R. Civ. P. 12(b)(1)...........................................................................6, 10

Fed. R. Civ. P. 12(b)(6).............................................................................10

Fed. R. Civ. P. 12(c)..................................................................................19

Fed. R. Civ. P. 15(a)..................................................................................13

Fed. R. Civ. P. 59(e)...............................................................................9, 12

Fed. R. Civ. P. 60(b)(6)..........................................................................9, 12

## Regulations

Treasury Regulations §§ 1.414(b)-1 to 1.414(c)-5 .....................................3

## ARGUMENT

The New England Teamsters and Trucking Industry Pension Fund ("the Fund") has repeatedly shown that there is subject matter jurisdiction in this case and that D&N Transportation, Inc. ("D&N") and N&D Transportation, Inc. ("N&D") are alter egos, i.e. the same entity, responsible for the same withdrawal liability.  These facts have been ignored by the District Court and clouded by differing opinions and justifications for dismissal.  With subject matter jurisdiction established, it is clear that the District Court abused its discretion in not allowing the Fund to amend its Complaint to add in the temporal elements it claimed were lacking.

1.  **THE FUND CAN SHOW D&N AND N&D ARE THE SAME ENTITY AND EQUALLY RESPONSIBLE FOR THE WITHDRAWAL LIABILITY**

In their Brief filed June 8, 2016 ("Opposition Brief"), the Defendants claim that the Fund "cannot prove common control or that Defendants and D&N Transportation are the same entity.  Therefore, [the Fund] would not be able to establish subject matter jurisdiction of the ERISA alter ego claim because [it] cannot show a direct violation of ERISA." (Opposition Brief, pg. 4)  This claim is not only inaccurate but and also demonstrates a fundamental misunderstanding of alter ego liability.

Case: 15-2558   Document: 36   Page: 8   Date Filed: 07/27/2016   Entry ID: 6020674

First, "common control" itself has a very distinct meaning in regards to withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act, 29 U.S.C. § 1381, *et seq*. ("MPPAA"). "Common control" is defined by Treasury Regulations §§ 1.414(b)-1 to 1.414(c)-5. It applies to ownership of withdrawing companies and defines how companies, which meet specific ownership criteria, can be held responsible for the withdrawal liability of a related entity. No separate ERISA violation needs to be alleged when "common control" is found. See *P.B.G.C. v. Ouimet Corp.*, 630 F.2d 4, 9-11 (1st Cir. 1980), cert. denied; 450 U.S. 914 (1981). However, Defendants use the term "common control" differently here.

Citing to *Central States Pension Fund v. Central Transport, Inc.*, 85 F.3d 1282, 1286 (7th Cir. 1996), Defendants use the term "common control" to describe the relationship, not the ownership, between entities that Central Transport claimed were alter egos. "Central Transport argues that Cartage and Transport's direct control over the Rogers Group's hiring, recruiting, supervising, and maintenance of payroll records was sufficient to create 'alter-ego' liability." *Id.* at 1288. In essence, this holding is no different from the Fund's theory of liability in this case to portray N&D and D&N as "one entity." *Id.* at 1287. While the Fund did not use the term "direct control" in its Complaint, it is not required to do so. It

demonstrated this control by alleging the factors required by this Court in *Belmont* to prove alter ego liability.  *Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304 (1st Cir. 1998).

Second, requiring the Fund to allege and prove a separate, direct violation of ERISA by D&N's alter ego is counter-intuitive.  It ignores the core of the "alter ego" doctrine because "a contention that A is B's 'alter ego' asserts that A and B are *the same entity*; liability then is not vicarious but direct."  *Board of Trustees v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. Ind. 2000).  There was also no separate ERISA violation alleged in *Central Transport*.[1]

If an actual, separate direct violation by the alleged alter ego needs to occur, then why is there an alter ego doctrine at all?  If the Fund had facts that showed that N&D committed a separate and distinct ERISA violation, then the Fund need only file an ERISA complaint as it typically does without citing to the alter ego doctrine.  Instead, the direct violation in this case is shown by connecting N&D to D&N through their common ownership, management, business purpose, customers, employees and operation.  (See Appellant's Brief, p. 24).  Therefore, the non-payment of withdrawal liability is D&N's violation as well as N&D's violation, i.e the *Belmont* factors.  See also *Bd. of Trs. v. Full Circle Group, Inc.*,

---

[1] Even the decision in *Peacock v. Thomas*, 516 U.S. 349 (1996) "is unclear as to what constitutes an independent allegation of a violation of ERISA."  *Brown v. Astro Holdings*, 385 F. Supp. 2d 519, 523 (E.D. PA 2005).

2016 U.S. App. LEXIS 11600, 10 (7th Cir. June 24, 2016) ("If FCG is the same company as HMC and thus by definition its alter ego—the requisite sameness being inferred from such practices as commingling of the funds of the two companies, identity of their key personnel, and disregard of legal formalities—then HMC's withdrawal liability is FCG's liability.")

Third, the Defendants have also used the incorrect standard for a Motion to Dismiss.  The Plaintiff is not required to "prove" anything at this stage of the litigation.  Rather, Plaintiff's complaint needs to contain allegations which "must be enough to raise a right to relief above the speculative level," but the plausibility requirement "does not impose a probability requirement at the pleading stage." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Regardless, the Fund will most certainly show subject matter jurisdiction because it can prove D&N and N&D are in fact "alter egos", i.e. the same entity, and therefore both are directly responsible for the withdrawal liability.

As stated in Plaintiff's brief, "a court is not bound by the allegations in the pleadings when considering motions to dismiss for lack of subject matter jurisdiction brought under Rule 12(b)(1).  The Court can look beyond the pleadings -- to affidavits and depositions -- in order to determine jurisdiction.  See Wright & Miller, Federal Practice and Procedure: Civil § 1363 (1990)."  *White v. Commissioner*, 899 F. Supp. 767, 771 (D. Mass. 1995).  Therefore, besides the

D&N and N&D both being in the business of truck driving, operating out of the same building, sharing administrative office space, having owners from the same family, common employees and customers, and transferring money between the two companies (Appellant Brief, p. 24), this Court can take into account the following facts uncovered during discovery:

- D&N owners L. Duhamel and E. Duhamel worked for both companies at the same time.

- The two companies had the same phone number, went on joint sales calls, shared insurance policies and utility bills.

- N&D employee V. Carlucci testified that she regularly performed work for D&N and other entities but was only compensated for her work by N&D.

- Other employees of N&D would perform administrative work, such as banking, filing and accounting for D&N.

- D&N and N&D shared clerical workers, warehouse employees and salesman.

- V. Carlucci testified that L. Duhamel "reviews [N&D's] financial statements" and "he helps with coming up with rates for specific quotes", despite L. Duhamel's testimony that he does "mainly maintenance" and "running around for parts" at N&D.

- D&N and N&D shared one banking "token" at Citizens Bank which allowed V. Carlucci to remotely access all the accounts of both companies.

- Family members treated the companies' assets as their personal assets. Funds from both companies financed the purchase of a boat, which has been used exclusively by family members and has no business

purpose whatsoever.  E. Duhamel also received paychecks from both companies despite her testimony that she has not worked in 47 years.

(App., pp. 57-58, 69-80, 92-96, 100-107, 109-111, 117-129, 130-132, 134, 138-139, 140-169).

All of this evidence, which demonstrates "direct control", was completely ignored by the District Court.  These facts present a classic example of alter ego, which applies to "parallel companies" such as D&N and N&D.  *Belmont*, 139 F.3d at 307.  If these facts do not prove that these two entities operated as one under the *Belmont* factors – what facts possibly would?  They clearly demonstrate how these two, allegedly separate entities were actually parallel companies operating in tandem, under the same management, sharing business costs, employees and a financial relationship, when D&N's withdrawal from the Fund occurred.  See also *Union Builders, Inc. v. NLRB*, 68 F.3d 520, 524 (1st Cir. 1995) (court stated that "the alter ego doctrine looks behind the corporate form to determine whether nominally distinct corporations are in truth…but divisions or departments of a 'single enterprise.'") quoting *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 402 (1960); *C.E.K. Industrial Mechanical Contractors, Inc. v. NLRB*, 921 F.2d 350, 354 (1st Cir. 1990) (Board used the alter ego doctrine where companies were parallel operations and lists precedent cases for the application of the doctrine).

While the August 2015 Decision stated that alter ego cases are "typically" brought at the same time as the primary case (Add., p. 5) that is not a requirement

under *Belmont* or any case in this Circuit.  It was also impossible in this case to bring the alter ego claims at the same time as the original proceeding.  The signatory employer, D&N, defaulted and the Fund was only able to obtain information regarding N&D through post judgment discovery.  *Langone v. D&N Transportation Co., Inc., C.A. No. 12-10646 NMG.*  The Fund should not be penalized for D&N's default.

Therefore, Defendants' argument does not stand as the Fund has not only alleged but will prove that D&N and N&D are "alter egos", i.e. the same entity.  Therefore, the Fund will be able to establish subject matter jurisdiction of the ERISA alter ego claim because it can show a direct violation of ERISA.

## 2. THE FUND DID NOT MISREPRESENT THE DISTRICT COURT'S DECISION

The Defendants claim that the Fund "clearly misrepresented" the District Court's decision "in an effort to obtain a favorable standard of review."  The Fund denies having done so.

As stated in the Fund's Motion for Relief from Judgment pursuant to Rule 60(b)(6) and a Motion to Amend the Judgment Pursuant to Rule 59(e), the August 2015 Decision contained flawed arguments and reasoning.  First, it stated that in its initial decision the District Court was wrong to hold that the Fund's allegation that N&D is an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5) and § 4001(b)(1), 29 U.S.C. § 1301(b)(1) and an employer in an industry affecting

commerce within the meaning of ERISA § 3(5), 29 U.S.C. § 142(1) and § 152(2),(6) and (7) was a "new theory of liability." This allegation was Paragraph 6 of the Complaint (Add., p. 9). The District Court also incorrectly stated that there were "cases in which the third-party defendants (i.e. the alleged alter egos) exercised common control over the ERISA plan." (Add., p. 7). This statement not only misstates the case holdings but demonstrates a complete misunderstanding of ERISA law. As stated above, this statement is improper as the term "exercise common control" has a distinct meaning under the section of ERISA which deals with withdrawal liability. (*supra* at 1-2). ERISA multiemployer benefit plans are administered, or controlled, by a joint union and employer Board of Trustees, not one employer. Further, control over an ERISA plan is irrelevant to the alter ego liability of a contributing employer and a parallel entity for withdrawal liability.

Lastly, the District Court's August 2015 Decision outlined a dispute between the Tenth and Seventh Circuits over how to interpret *Peacock*, and noted that the First Circuit has yet to weigh in. Citing *Ellis v. All Steel Constr., Inc.*, 389 F.3d 1031 (10th Cir. 2004), the court oddly focused on the defendant's status as a "plan fiduciary." As stated in the Plaintiff's Rule 59 and Rule 60 Motions: *Ellis* "involved liability of an alter ego for delinquent contributions [and did] not mention an employer's fiduciary duties to an ERISA pension plan nor does it

require any such ERISA fiduciary obligation in order to succeed in an alter ego claim." (App., p. 20).

Despite the Defendants' claim that the "District Court dismissed the First Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (Opposition Brief, p. 8), the August 2015 Decision made no such holding on subject matter jurisdiction stating:

> The existing circuit split is therefore about whether, in a follow-on suit to collect an ERISA judgment from an alleged alter ego of a judgment-debtor, a plaintiff's failure to allege the follow-on defendant's direct role in or control over the ERISA violation creates a deficiency in the claims or in the subject-matter jurisdiction. The Tenth Circuit would likely say the latter, and the Seventh would say the former. Fortunately, I do not need to decide which path this circuit would follow to decide this case. Even if I assume that a mere alter-ego allegation is sufficient to clear the subject-matter jurisdiction hurdle—as the Seventh Circuit approach suggests –plaintiff still fails to state a claim for which relief can be granted.

(Add., pp. 7-8).

The definitive ruling on subject matter jurisdiction came in the November 2015 Decision, which clearly states the following:

- "I allowed defendants' motion to dismiss because plaintiff had failed to state a claim upon which relief could be granted." (Add., p. 15).

- "I analyzed the subject matter jurisdiction issue but concluded that I need not decide it because the plaintiff had failed to state a claim upon which relief could be granted." (Add., p. 16).

- "In view of *Peacock* and *Futura*, plaintiff's proposed amended ERISA claims would not provide a basis for federal jurisdiction." (Add., p. 20).

Therefore, it is clear that the first time the District Court ruled on the subject matter jurisdiction arguments in this case, was in its second decision in November 2015.  Since subject matter jurisdiction was not the basis of the August 2015 Decision, the Plaintiff did not address those arguments in its Rule 59 and Rule 60 Motions, and the Fund, therefore, believes that those issues should now be reviewed *de novo*.

Defendants also claim that the Fund "raised the issue of subject matter jurisdiction" in the Fund's Rule 59 and Rule 60 Motions, yet this is incorrect.  The only time subject matter jurisdiction was mentioned in the Fund's Rule 59 and Rule 60 Motions was when it described the grounds that Defendants raised in their Motions to Dismiss.  (App., 16).  On the contrary, it was the Defendants who raised the subject matter jurisdiction argument in their Opposition to the Plaintiff's Rule 59 and 60 Motions. (App., 11-12).

3. **THE FUND'S RULE 59 AND RULE 60 MOTIONS WERE PROPERLY PLED**

The Defendants' claim that the Fund's "motion for reconsideration was a motion for a request for a third amendment of the First Amended Complaint…cloaked as a motion under Rule 60(b)(6)" is a mischaracterization of the Fund's arguments.  (Opposition Brief, p. 17).  Since the Plaintiff asked for both Relief from Judgment pursuant to Fed. R. Civ. P. Rule 60(b)(6) and Leave to

Amend pursuant to Fed. R. Civ. P. 59(e) – there was no need to "cloak" anything in Plaintiff's motion.

The Plaintiff's Rule 59 and 60 Motions interpreted the August 2015 Decision to mean that the Complaint had to include the "temporal elements" that the District Court stated were lacking in order to show a "meritorious claim" under Rule 60. This interpretation was bolstered by the November 2015 Decision which stated that the Fund's claims might have been adequately pled if there were allegations that: "(1) defendants had or breached any duties under an ERISA plan, (2) defendants were fiduciaries of an ERISA plan, or (3) defendants were D&N's alter egos at the time D&N violated ERISA." (Add., p. 18). However, (1) and (2) are incorrect requirements as the obligation to pay withdrawal liability does not arise from any fiduciary duty under or of an ERISA plan, it arises under ERISA § 4301(b), 29 U.S.C. § 1451(b) (Failure of an Employer to Make Withdrawal Liability Payment within the Prescribed Time). Therefore, according to the District Court's reasoning, the Complaint was dismissed because the Fund did not allege that the Defendants were D&N's alter egos as the time D&N violated ERISA, i.e. at the time of withdrawal from the Fund. Despite Defendants' contention that including only one temporal element was a "calculated decision", the Fund admitted it was a mere oversight. (App., p. 43). Further, allowing the

Fund to amend the Complaint to add in the "temporal elements" is not futile as the Fund has shown that subject matter jurisdiction exists. (*supra* at 4-6)

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a), *Foman v. Davis*, 371 U.S. 178, 182 (1962). In addition, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman*, 371 U.S. at 181-182, citing *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Given that this action was commenced in March 2014 and parties had just completed discovery when the Defendants' Motions to Dismiss were filed, it seems particularly harsh that the amendment was denied when Plaintiff had only previously amended the Complaint to add relevant parties that were identified during discovery. The First Amended Complaint merely changed the status of the Reach and Apply Defendant JED to a Defendant in its own right and the proposed Second Amended Complaint, which was denied, only sought to add other Defendants as alter egos as soon as they were gleaned from discovery.[2]

In consideration of judicial economy and efficiency, the Fund has a duty to bring its case against all alter egos as soon as it learns of their existence. (See *Cooper v. Charter Communs. Entm't I, LLC*, 2015 U.S. Dist. LEXIS 56149, 14 (D.

---

[2] A Second Amended Complaint was also not attached to the motion as the Defendants allege.

Mass. Apr. 28, 2015) (leave to file a fourth amended complaint was allowed partly because "the most significant issues are judicial economy.").

**4.** **THE ALTER EGO DOCTRINE DOES NOT REQUIRE AN UNLAWFUL MOTIVE OR AN AGENCY RELATIONSHIP**

The Defendants boldly claim that this Court has "adopted the intent element as a prerequisite in an alter ego analysis" citing to *Penntech Papers v. NLRB*, 706 F.2d 18 (1st Cir. 1983). (Opposition Brief, p. 48). They also state that "[a]n entity having common ownership, coupled with common management with another entity, does not give rise to alter ego liability without additional facts exhibiting the existence of an agency relationship." *Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56, 70 (D. Mass 2001), See *Am. Home Assur. Co. v. Sport Maska, Inc.*, 808 F. Supp. 67 (D. Mass. 1992). Both of these assertions are not only false but also ignore this Court's holding in *Belmont* – the leading case in this Circuit on the ERISA alter ego doctrine.

Neither *Sigros* nor *Sport Maska* is an ERISA case. These cases deal with using the alleged connections between two companies to satisfy the *personal* jurisdiction requirement of the courts in which the complaints were brought. Each of these cases, specifically rely on the Massachusetts long-arm statute, Mass. Gen. L. ch. 223A, § 3, which states: "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent." This is a completely different analysis than the case at hand.

Stating that this Circuit requires intent as a "prerequisite" to an alter ego analysis is not only incorrect but a blatant mischaracterization of the holding in this Circuit: "In particular, there is no rule that wrongful motive is an essential element of a finding of alter ego status." *Belmont* 139 F.3d at 308, citing *NLRB v. Hospital San Rafael, Inc.*, 42 F.3d 45, 51 (1st Cir. 1994). Not one of the cases cited by the Defendants actually say that it is a "prerequisite", instead, each states that an unlawful or non- or anti-union animus is merely one of the factors, in a long list, that is examined to make the determination of whether or not an alter ego exists.[3]

As to the Defendants' claim that there is currently a split among the Circuit Courts in this regard, this allegation is also false. (Opposition Brief, p. 48). The National Labor Relations Board, and the First, Second, Third, Fourth, Sixth, Tenth and D.C. Circuits do not require a finding that the alleged alter ego had an unlawful motive to impose alter ego liability. See *Johnstown Corp.*, 313 N.L.R.B. 170, 171 (1993); *NLRB v. Hospital San Rafael, Inc.*, 42 F.3d 45, 51 (1st Cir. 1994); *Ret. Plan of the Unite Here Nat'l Ret. Fund v. Kombassan Holdings A.S.*, 629 F.3d 282, 288 (2d Cir. 2010); *Stardyne, Inc. v. NLRB*, 41 F.3d 141, 150 (3d Cir. 1994);

---

[3] In its decision in *NLRB v. Hospital San Rafael, Inc.*, 42 F.3d 45, 51 (1st Cir. 1994), this Court clarified its holding in *Penntech Papers, Inc. v. NLRB*, 706 F.2d 18 (1st Cir. 1983): "Since our discussion in *Penntech* and *C.E.K.* has given rise to some uncertainty about this court's position on the role of wrongful motive in alter ego cases, this opinion has been circulated prior to filing to all active judges of this court, and no member of the court expressed disagreement with the panel's treatment of the issue."

*Alkire v. NLRB*, 716 F.2d 1014 (4th Cir. 1983); *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576 (6th Cir. 1986); *NLRB v. Tricor Prods.*, 636 F.2d 266, 270 (10th Cir. 1980); *Flynn v. R.C. Tile*, 353 F.3d 953, 960 (D.C. Cir. 2004).

The Defendants point out that "a federal common law should be established which sets forth the elements required for proving alter ego liability in a claim alleging ERISA violation instead of applying the substantive state law." (Opposition Brief, p. 48).   The Fund argues that a federal common law already exists.  As stated in *Resilient Floor Covering Pension Fund v. M & M Installation, Inc.*, 2012 U.S. Dist. LEXIS 26354, 10-12 (N.D. Cal. Feb. 29, 2012):

> the alter ego doctrine has been a part of the federal common law governing employer-union relations for a long time. In the context of labor disputes, the alter ego doctrine developed to prevent employers from evading labor law obligations merely by changing or altering their corporate form. See, e.g., *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 62 S. Ct. 452, 86 L. Ed. 718 (1942); *Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel and Restaurant Employees, and Bartenders Int'l Union*, 417 U.S. 249, 259 n. 5, 94 S. Ct. 2236, 41 L. Ed. 2d 46 (1974); see also *Goodman Piping Products, Inc. v. NLRB*, 741 F.2d 10 (2d Cir. 1984); *Iowa Express Distribution, Inc. v. NLRB*, 739 F.2d 1305 (8th Cir. 1984); *NLRB v. Al Bryant, Inc.*, 711 F.2d 543 (3d Cir. 1983); *Penntech Papers, Inc. v. NLRB*, 706 F.2d 18 (1st Cir. 1983); *Alkire v. NLRB*, 716 F.2d 1014 (4th Cir. 1983); *Nelson Electric v. NLRB*, 638 F.2d 965, 968 (6th Cir. 1981); *NLRB v. Tricor Products, Inc.*, 636 F.2d 266 (10th Cir. 1980); *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1111 (9th Cir. 1979). Nothing in the MPPAA or in its legislative history suggests that Congress intended to eliminate a long recognized method of addressing sham employer entities which undermine collective bargaining agreements. In fact, Congress "intended that the plan sponsor, the arbitrator, and the courts follow the substance rather than the form of such transactions in determining, assessing, and collecting

withdrawal liability." See 126 Cong. Rec. 23,038 (1980) (statement of Rep. Frank Thompson). If Congress wanted to omit these theories of recovery from the statutory framework of the MPPAA, it could have done so. See *Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 108, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991)("Congress is understood to legislate against a background of common-law adjudicatory principles.")

The alter ego analysis is also more lenient when ERISA is involved: "With regard to alter ego liability in cases involving claims to pension benefits protected by ERISA, as amended by the MPPAA, there is 'a federal interest supporting disregard of the corporate form to impose liability.' *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 460-61 (7th Cir. 1991) (The congressional intent of ERISA is to hold employers responsible for pension benefits, so that when the corporate form poses a bar to liability, "concerns for corporate separateness are secondary to what we view as the mandate of ERISA." ) (internal citations omitted)." *Bd. of Trs. v. Foodtown, Inc.*, 296 F.3d 164, 169 (3d Cir. N.J. 2002).

Further, *Peacock* did not address "whether alter ego or veil piercing remedies are available to recover withdrawal liability." *Resilient Floor,* 2012 U.S. Dist. LEXIS 26354, at 13. It was a veil-piercing claim against an individual, not a claim showing two companies working in parallel as alter egos. The underlying theory of the present case did not occur "some four to five years after… [the] ERISA plan was terminated" as did the alleged wrongdoing in *Peacock*. *Peacock*, 516 U.S. at 353. Unlike the theories of relief in *Peacock* that "did not exist and

16

could not have existed, at the time the court entered judgment in the ERISA case," the theories brought forth by this action most certainly existed at the time the judgment was entered, however, because D&N defaulted, the Fund was unable to proceed with the discovery necessary to unearth these facts. *Id.* at 359. Lastly, *Peacock* left an "open-ended caveat that 'extraordinary circumstances' (thus far unspecified) might 'justify ancillary jurisdiction over a subsequent [judgment-enforcement] suit like this.' Certainly, ERISA protects important interests." *Ellis*, 389 F.3d at 1037, quoting *Peacock*, 516 U.S. at 359.

### 5. <u>THE FUND'S FRAUDULENT TRANSFER CLAIM CAN SURVIVE A MOTION TO DISMISS</u>

In Count III of its Complaint, the Fund alleged that L. Duhamel and E. Duhamel assigned a $750,000 mortgage to themselves from D&N. The Fund further alleged that the ongoing repayments for that mortgage, from JED to L. Duhamel and E. Duhamel, are fraudulent transfers pursuant to R.I. Gen. Laws § 6-16. (Complaint, ¶¶ 40 – 55).

Under Rhode Island's Uniform Fraudulent Transfer Act, "the term 'asset' is defined broadly, with certain limited exceptions." *Rohm & Haas Co. v. Capuano,* 301 F. Supp. 2d 156, 161(D.R.I. 2004). The Fund contends that the payments JED has made to L. Duhamel and E. Duhamel on the mortgage are the assets of D&N, since the assignment was made without any consideration. These payments have

been ongoing and many have been made within the past 4 years. Therefore, the statute of limitations issue raised by the Defendants is moot.

The Opposition brief states that the Duhamels "are entitled to a judgment on the pleadings pursuant to Rule 12(c)" on Count III. (Opposition Brief, p. 43). A party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings is 'a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings …' Wright & Miller, Federal Practice and Procedure: Civil 2d § 1367 (1990). A trial court must accept all of the facts presented by the non-movant as true and the inferences to be drawn therefrom must be viewed in the light most favorable to the non-movant." *Tavares de Almeida v. Childrens Museum*, 28 F. Supp. 2d 682, 685 (D. Mass. 1998). In addition, a motion for judgment on the pleadings "may not be granted by a court 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99, (1957))". *Id.*

Since the Defendants have not properly pled their motion and the Fund can prove facts to support its claim, this request should be denied.

## <u>CONCLUSION</u>

For the reasons stated above, all Counts in the Complaint should be reinstated so that the Fund can litigate the merits of the case.

Dated:  July 27, 2016                    Respectfully Submitted,


                                         /s/ Melissa A. Brennan
                                         Melissa A. Brennan, Esq.
                                         BBO # 669489
                                         Catherine M. Campbell, Esq.
                                         BBO # 549397
                                         Attorneys for Plaintiff-Appellant
                                         Feinberg, Campbell & Zack, PC
                                         177 Milk Street, Suite 300
                                         Boston, MA 02109
                                         Telephone (617) 338-1976
                                         Facsimile (617) 338-7070

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

The undersigned confirms that this brief complies with Rule 32(a).

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,639 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Times New Roman font size 14.

Dated:  July 27, 2016

/s/ Melissa A. Brennan
Melissa A. Brennan, Esq.

Attorney for Appellant, the New England Teamsters and Trucking Industry Pension Fund

## **CERTIFICATE OF SERVICE**

     I, Melissa A. Brennan, hereby certify that I caused a copy of the foregoing documents to be mailed this day by U.S. first-class mail to:

Oleg Nikolyszyn, Esq.
155 South Main Street, Suite # 303
Providence, RI 02903

Robert A. Mitson, Esq.
603 Park Avenue
Woonsocket, RI 02895

Dated:  July 27, 2016                          /s/ Melissa A. Brennan
                                                 Melissa A. Brennan, Esq.

                                                 Attorney for Appellant, the
                                                 New England Teamsters and
                                                 Trucking Industry Pension
                                                 Fund